## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY JOHNSON and DARRYL MOORE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 16-cv-06776 |
| v. | ) ) | Judge Andrea R. Wood |
| DIAKON LOGISTICS, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In this putative class action, Plaintiffs Timothy Johnson and Darryl Moore have sued

Defendants Diakon Logistics ("Diakon"), as well as Innovel Solutions, Inc. and Sears Roebuck

and Co. (collectively, "Sears"), for alleged violations of the Illinois Wage Payment and

Collection Act ("IWPCA"), 820 ILCS 115/9. Specifically, Plaintiffs claim that Defendants

incorrectly classified delivery drivers as independent contractors instead of employees, resulting

in unlawful deductions being taken out of their paychecks. Now before the Court is Plaintiffs'

motion to certify a plaintiff class under Federal Rule of Civil Procedure 23(b)(3). For the reasons

explained below, the Court grants the motion.

## BACKGROUND

In their Third Amended Complaint ("TAC"), Plaintiffs claim that Defendants required

them and other drivers to sign agreements falsely stating that they were independent contractors.

(TAC ¶ 18, Dkt. No. 102.) Defendants then deducted certain expenses from those drivers' pay,

including amounts for insurance coverage, truck rentals, and uniforms. (*Id.* ¶ 23.) Plaintiffs

contend that because Defendants exercised control and direction over their work, they instead

should have been classified as employees under the IWPCA, which prohibits employers from taking deductions from employees' wages. (*Id.* ¶¶ 19, 61–63, 67–69.)

Specifically, as detailed in the TAC, Diakon provides supply-chain management services for businesses hoping to reduce transportation costs; it delivers appliances, furniture, and other items to locations across the United States. (*Id.* ¶ 16; Defs.' Opp'n to Mot. for Class Certification at 2, Dkt. No. 143.) Innovel Solutions, a subsidiary of Sears, Roebuck and Co. that delivers furniture and appliances for Sears, is one of Diakon's customers in Illinois. (TAC ¶ 8; Pls.' Mem. in Supp. of Mot. for Class Certification at 1, Dkt. No. 135.) Innovel Solutions focuses on consolidating and grouping orders for delivery to Sears's customers. (Defs.' Opp'n to Mot. for Class Certification at 2.) Diakon contracts with transportation companies, such as those run by Plaintiffs Johnson and Moore, to drive delivery trucks and deliver Sears merchandise to customers' homes.[1] (TAC ¶ 16; Defs.' Opp'n to Mot. for Class Certification at 2.)

Johnson and Moore are Illinois residents who performed delivery services for Diakon— in Johnson's case, from 2011 to 2013, and in Moore's case, from 2014 to 2015. (TAC ¶¶ 3–4.) They allege that they were required to sign service agreements with Diakon that classified them as independent contractors. (*Id.* ¶ 18; Service Agreement, Ex. 4 to Defs.' Opp'n to Mot. for Class Certification, Dkt. No. 146-4.) Diakon further required drivers to observe a strict set of rules with respect to the delivery of Sears merchandise. When making Sears deliveries, drivers were required to wear Sears uniforms, drive trucks with a Sears logo, and carry Sears business cards. (TAC ¶ 37(g).) They were also required to report to a Sears warehouse for meetings and

---

[1] In their opposition to class certification, Defendants note that Diakon contracted with company contractors rather than with the individual Plaintiffs. Indeed, for the example agreement provided to the Court, Johnson signed on behalf of his company, EZ Techniques, Inc. (Service Agreement, Ex. 4 to Defs.' Opp'n to Mot. for Class Certification, Dkt. No. 146-4.) But whether the individual Plaintiffs or their companies were actually parties to the service agreements does not impact the question of whether the Court should certify the class of individual drivers proposed by Plaintiffs.

receiving products. (*Id.* ¶ 37(a)–(b).) These requirements, Plaintiffs contend, illustrate that Sears and Diakon exercised such extensive control over the drivers' work performance that the drivers should have been classified as employees under Illinois law. Yet, Plaintiffs allege, Defendants required drivers to sign service agreements classifying them as independent contractors and allowing Defendants to make deductions from their paychecks. For instance, Diakon and Sears required that deductions be taken from drivers' paychecks for expenses such as truck rental and vehicle maintenance costs, insurance, and faulty installations. (*Id.* ¶¶ 29, 37(d), 37(g).)

Based on their allegations that drivers were uniformly treated as employees by Diakon and Sears, Plaintiffs seek to certify a class consisting of delivery drivers who made deliveries from June 28, 2006 to the present and signed service agreements classifying them as independent contractors. On behalf of the proposed class, Plaintiffs seek compensatory and punitive damages. Diakon, on behalf of all Defendants, opposes Plaintiffs' request for class certification.

## DISCUSSION

The IWPCA applies to all employees and employers in Illinois. 820 ILCS 115/1. Its purpose is "to protect employees in Illinois from being stiffed by their employers." *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998) (internal citations and emphasis omitted). Toward that end, the IWPCA imposes wage-related obligations on employers and provides a means for employees to collect wages due them. 815 ILCS 115/4–115/6. Plaintiffs in this case claim that Defendants violated the provision of the IWPCA that forbids employers from taking deductions from wages unless those deductions are "made with the express written consent of the employee, given freely at the time the deduction is made." 820 ILCS 115/9. Plaintiffs contend that Defendants required their drivers to sign contracts classifying them as independent contractors despite being subject to a strict set of rules and requirements set out by Diakon and

3

Sears. Defendants counter that Plaintiffs have failed to demonstrate that the IWPCA should apply on a class-wide basis, and further argue that even if the IWPCA does apply to the drivers, the question of whether each driver authorized deductions from their wages is an individualized inquiry unsuited to a class action.

## I.        Requirements for Class Certification

Federal Rule of Civil Procedure 23 permits individual plaintiffs to sue as representatives of an aggrieved class while imposing upon the Court a gatekeeping function. *See* Fed. R. Civ. P. 23. A district court has broad discretion to determine whether to certify a class action. *See Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 471 (7th Cir. 1997). To be certified, a proposed class must first satisfy all four requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a).

If Rule 23(a) is satisfied, the proposed class must fall within one of the three categories in Rule 23(b):

> "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because of the risk that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior."

*Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011). Lastly, the class itself must be "identifiable," meaning that the "class definitions must be definite enough that the class can be ascertained." *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

The would-be class representative bears the burden of showing that the proposed class satisfies the Rule 23 requirements. *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 377 (7th Cir. 2015). If the class fails to meet any one of the requirements, it cannot be certified. *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). Moreover, "[o]n issues affecting class certification . . . a court may not simply assume the truth of the matters as asserted by the plaintiff." *Id.* "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, plaintiffs seeking class certification must affirmatively demonstrate their compliance with the rule—for example, they must be prepared to prove that there are in fact sufficiently numerous plaintiffs and common questions of law or fact. *See id.* Class certification is proper only if a court, after a "rigorous analysis," determines that the Rule 23 requirements have been satisfied. *Id.* at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

## II.     Class Definition

The Court turns first to the final requirement listed above: the sufficiency of the class definition. A class definition "must be definite enough that the class can be ascertained." *Oshana*, 472 F.3d at 513. Plaintiffs' proposed class consists of:

> All delivery drivers who (1) signed a Service Agreement with Diakon, (2) were classified as independent contractors, and (3) who performed deliveries for Diakon and Sears in Illinois between June 28, 2006 and the present.

(Pls.' Mem. in Supp. of Mot. for Class Certification at 1, Dkt. No. 135.) The class list produced by Defendants contains the names of every individual driver who falls into the proposed class. (Class List, Ex. 6, Dkt. No. 149.) Defendants do not appear to challenge the definiteness or ascertainability of the class. The Court therefore finds that the class is sufficiently definite to enable one to determine whether a particular individual is a member.

### III.     Analysis under Rule 23(a)

#### A.     Numerosity

The Court next considers the requirements of Rule 23(a), beginning with numerosity.

Rule 23(a)(1) requires a showing that the class is "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). While the rule does not require any specific minimum number of plaintiffs, the Seventh Circuit has recognized that a class of 40 members is generally considered sufficient. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017). Plaintiffs need not prove an exact number of class members to satisfy the numerosity standard, but they must provide more than "mere speculation or conclusory allegations as to the size of the putative class." *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008).

Diakon disclosed in discovery a class list containing the names of 275 potential class members. (Proposed Class List, Ex. 6 to Defs.' Opp'n to Mot. for Class Certification, Dkt. No. 149.) Diakon contends that 85 of the proposed class members live in Missouri and should be considered ineligible (and therefore not counted) for the class. But the IWCPA "protects an employee who performs work in Illinois for an Illinois employer, even if he resides in another state." *Adams v. Catrambone*, 359 F.3d 858, 863 (7th Cir. 2004). If Defendants eventually produce evidence showing that particular non-resident drivers performed only a few days of work in Illinois a year, that might be enough to defeat the IWPCA claims of those drivers. *See Cohan v. Medline Indus.*, 170 F. Supp. 3d 1162, 1175 (N.D. Ill. 2016) (finding that plaintiffs present in Illinois for only a few days a year and primarily for training purposes did not qualify as Illinois employees); *see also Baxi v. Ennis Knupp & Assoc., Inc.*, No. 10-cv-06346, 2011 WL 389034, at *14–15 (N.D. Ill. Sept. 2, 2011) (finding that the IWPCA applied to a resident of

India alleging he performed most of his work in Illinois). But it is mere speculation at this stage to suggest that individual drivers with a business or personal address outside Illinois must not have viable IWPCA claims. Courts routinely certify classes that include some members who might ultimately not be entitled to recovery. Moreover, even if all 85 of the supposed Missouri residents were excluded, the proposed class would still have approximately 190 members—well above the numerosity threshold. Therefore, the Court finds that Plaintiffs' proposed class meets Rule 23(a)'s numerosity requirement.

### B.    Commonality

Rule 23(a)(2) requires that there be questions of law and fact common to the class. To satisfy the commonality requirement, the claims of proposed class members "must depend upon a common contention that is capable of class-wide resolution." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015). The determination of the truth or falsity of the common contention must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "[A] single common question" is enough to satisfy the commonality standard. *Id*. at 349.

According to Plaintiffs, all delivery drivers who were classified as independent contractors and performed deliveries from June 28, 2006 to the present suffered the same injury—*i.e.*, misclassification by Defendants, which, in turn, resulted in unlawful deductions from Plaintiffs' paychecks. The putative class members' claims thus pose a common question: whether Defendants violated the IWPCA by requiring delivery drivers to sign service agreements labelling them as independent contractors. The answer to that question will be the same for all putative class members. *See Berger v. Xerox Corp. Ret. Inc. Guarantee Plan*, 338 F.3d 755, 763 (7th Cir. 2003) ("What is sought is a declaration that Xerox's method of computing the lump

7

sums to which withdrawing employees are entitled is unlawful. That is a ground common to all members of the class.").

Diakon nonetheless argues that Plaintiffs are trying to shoehorn individualized determinations into a class action dispute. Since drivers performed different deliveries, some drivers performed significant work outside Illinois, and each driver's particular set of deductions would be unique to him or her, Diakon contends that there is no common answer to the question of whether each individual driver has a claim under the IWPCA. Diakon further argues that claims related to the service contracts necessarily involve individualized inquiries into (1) each class member's particular decision to sign a contract and (2) the unique set of deductions applicable to each contract.

The Court finds Defendants' arguments unpersuasive. It is true that work performed outside Illinois might not be covered by the IWPCA. *See Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (N.D. Ill. 1998) (suggesting that the IWPCA would not cover Illinois residents working in another state). But Plaintiffs' class definition is limited to delivery drivers who performed deliveries in Illinois. And even non-residents of Illinois may be protected under the IWPCA so long as they perform sufficient work in Illinois. That certain class members performed a substantial amount of work outside Illinois, as Diakon contends, does not matter so long as those drivers *also* performed sufficient work *in* Illinois. *See Spaulding v. Abbott Labs*, No. 10-cv-199, 2010 WL 4822894, at *6 (N.D. Ill. Nov. 22, 2010) (noting that the IWPCA could cover Florida resident who performed sufficient work in Illinois).

Moreover, the commonality requirement does not require that class members present identical factual situations—what matters is whether there is a common contention whose truth or falsity "will resolve an issue that is central to the validity of each claim." *Chi. Teachers*

*Union*, 797 F.3d at 434. Undoubtedly, the putative class members drove different routes and worked different hours from one another. But Plaintiffs allege that all potential class members were required to sign the same type of service agreement and were subject to the same set of restrictive operating rules while they worked as drivers. And, most crucially, Plaintiffs seek a determination that Defendants' practice of declaring drivers to be independent contractors instead of employees is unlawful. That is a ground for relief common to all members of the proposed class.

Nor does it matter that the allegedly unlawful deductions are different for each individual driver. Since their work product differed, the extent of the deductions taken from their paychecks also varied. The common question is whether it was appropriate for Defendants to classify these drivers as independent contractors and withhold money from their paychecks. Whether a particular class member authorized a given deduction and the amount of any particular deduction is a question regarding the potential damages for that plaintiff class member that need not be determined at the class certification stage. Commonality does not require that each individual class member be eligible for precisely the same damages. *Butler v. Sears, Roebuck, & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (explaining that the need for individualized damages inquiries does not preclude class certification if there are common questions of liability). As the propriety of Defendants' classification of drivers as independent contractors presents an issue most efficiently determined on a class-wide basis, the Court concludes that the commonality requirement has been satisfied.

### C.    Typicality

Rule 23(a)(3)'s typicality requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at

large." *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993). Plaintiffs satisfy the typicality requirement when their claims arise "from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). "The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

Here, Plaintiffs claim that all proposed class members signed the same contracts and suffered the same type of harm in the form of deductions withheld from their paychecks. Crucially, Plaintiffs' own claims arise from the same course of conduct that gives rise to the claims of the rest of the class members: Defendants' alleged misclassification of drivers as independent contractors instead of employees and related requirement that the drivers sign similar service agreements that classified them as independent contractors.

Diakon argues that evidence in the record suggests certain drivers, including the named Plaintiffs, provided written authorizations for the deductions taken from their wages. Deductions do not violate the IWPCA if they are authorized by the employee and exist for the employee's benefit. 820 ILCS § 115/9 (employers may make deductions from employees' wages when an employee freely gives express consent "at the time the deduction is made."); *see also Bell v. Bimbo Foods Bakeries' Distribution, Inc.*, No. 11-cv-3343, 2013 WL 6253450, at *5 (N.D. Ill. Dec. 3, 2013) (signed agreement authorizing weekly deductions for supplies vitiated IWPCA claim). Diakon does not claim to have evidence that every putative class member provided such authorization, but they do contend that Johnson and Moore testified that they freely signed promissory notes authorizing deductions from their paychecks. (Defs.' Opp'n to Mot. for Class

Certification at 16.) If that was the case, Johnson and Moore arguably would be inappropriate class representatives, since they would not have viable IWPCA claims.

At this stage of the proceedings, however, the Court cannot determine whether Johnson and Moore have valid claims based on the evidence presented. While Diakon cites deposition testimony in support of their assertion that Plaintiffs freely consented to deductions, Diakon does not include as evidence the particular documents that supposedly authorized deductions. And the testimony in question is not clear as to what particular payments are being discussed or the terms under which any deductions are being authorized. Moore, for instance, only responds that he "signed them all freely" when asked whether there were any documents he was forced to sign while contracted with Diakon. (Ex. G, Moore Dep., 147:13–17, Pls.' Mem. in Supp. of Mot. for Class Certification, Dkt. No. 135-1.) While Johnson testified that he freely signed a particular document authorizing Diakon to deduct a certain amount out of his pay, it is not clear what deduction was authorized and, again, the document itself is not in the record. (Ex. F, Johnson Dep., 219:10–221:8, Pls.' Mem. in Supp. of Mot. for Class Certification, Dkt. No. 135-1.)

The sparse information presented is not enough for the Court to determine whether either Moore or Johnson authorized any of the deductions identified in their TAC. If, down the line, Defendants produce evidence establishing that Johnson or Moore authorized the deductions at issue, Defendants may seek appropriate relief. For now, however, Diakon's argument is entirely speculative. The Court cannot conclude that the claims asserted by Johnson or Moore are in any way atypical as compared to those of other class members. The Court therefore finds that the putative class has satisfied the typicality requirement.

### D. Adequacy of Representative and Counsel

Finally, a proposed class must satisfy Rule 23(a)(4)'s adequacy requirement, which involves two inquiries: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

A proposed class representative is inadequate if his interests conflict with those of the absent class members or if he is subject to a defense not applicable to the class as a whole. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) (noting a named plaintiff who might devote a great deal of attention to rebutting individual defenses may not be an adequate representative); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Neither Johnson nor Moore's claim is idiosyncratic or unique. Nor do their interests conflict with those of absent class members. They suffered precisely the same injury as that alleged to have befallen the other class members: the misclassification and the resulting unlawful deductions from wages. With respect to adequacy of counsel, Plaintiffs' attorneys are both experienced class action litigators, and Defendants make no attempt to challenge their ability to represent the class. The Court thus concludes that Plaintiffs and their counsel are adequate representatives of the class.

### IV. Analysis under Rule 23(b)

Plaintiffs claim that the putative class satisfies Rule 23(b)(3). A proposed class satisfies Rule 23(b)(3) if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Factors

relevant to the superiority inquiry include:

> "(A) the class members' interests in individually controlling the prosecution or
> defense of separate actions; (B) the extent and nature of any litigation concerning
> the controversy already begun by or against class members; (C) the desirability or
> undesirability of concentrating the litigation of the claims in the particular forum;
> and (D) the likely difficulties in managing a class action."

*Id*.

### A.    Predominance of Common Questions

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 623 (1997). While similar to Rule 23(a)(2)'s commonality requirement, the predominance

requirement "is far more demanding." *Id*. at 624. Predominance does not exist where liability

determinations require individualized and fact intensive inquiries. *Kartman v. State Farm Mut.

Auto. Ins. Co.*, 634 F.3d 883, 891 (7th Cir. 2011). But "common issues need only predominate,

not outnumber individual issues." *Butler*, 727 F.3d at 801 (internal quotation omitted). Merely

asserting that common issues predominate is not enough to meet the predominance requirement.

*Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014).

Plaintiffs satisfy the predominance requirement here. As noted above, the key issues in

the case—whether Defendants violated the IWPCA by classifying drivers as independent

contractors and withheld unlawful deductions from drivers' paychecks—can be resolved on a

class-wide basis and do not present any issues of individual variation. Defendants contend that

the Court needs to make an individualized, fact-specific inquiry for each putative class member

because each driver worked for different lengths of time and had different deductions taken from

their paychecks. But as the Court noted above, while determining the particular amount of

deductions that each driver received is a fact intensive inquiry, it is a damages question, not a

13

liability determination. The need to calculate the particular deductions taken from each putative

class member for damages purposes does not defeat predominance. *See Messner v. Northshore*

*Univ. Health Sys.*, 669 F.3d 802, 819 (7th Cir. 2012) (requiring common results for class

members "would come very close to requiring common proof of damages for class members,

which is not required"). All drivers suffered the same alleged misclassification by Defendants

and were subjected to the same policies and practices in executing their duties as drivers.

Defendants do not dispute that these policies existed. The Court therefore finds that the central

question presented by Plaintiffs—whether the drivers should have been classified as employees

under the IWPCA—predominates over the individual issues.

### B.      Superiority of Class Action

Rule 23(b)(3) is satisfied when "a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy." The four Rule 23(b)(3) factors all support a

finding of superiority in this instance.

First, the putative class members' interests in individually controlling the prosecution of

separate actions is minimal; indeed, none appear to have brought individual suits. Fed. R. Civ. P.

23(b)(3)(A). Moreover, Plaintiffs claim that the potential individual recoveries in this case are

small enough to warrant class action treatment and Defendants have offered nothing to dispute

this assertion. Second, since no other case involving a putative class member's claims has been

brought to the Court's attention, there is no concern of duplicating litigation already begun by

class members. Fed. R. Civ. P. 23(b)(3)(B). Third, "the desirability or undesirability of

concentrating the litigation of the claims in the particular forum" weighs in favor litigating the

claims in the Northern District of Illinois: the class is limited to Plaintiffs who have worked in

Illinois, both named Plaintiffs reside in this District, and the unlawful practices alleged by

Plaintiffs occurred within Illinois. Fed. R. Civ. P. 23(b)(3)(C). Finally, with respect to the likely

difficulties in managing a class action, the Court finds that the predominance of common issues

and the readily available identification of putative class members weigh in favor of the class

action format.

In sum, the Court finds the class action to be a superior form of resolving the controversy

in question. The proposed class therefore satisfies the requirements of Rule 23(b)(3).

## V.      The Virginia Choice-of-Law Contract Provision is Irrelevant

In addition to the arguments in opposition to class certification detailed above, Diakon

also contends that Plaintiffs have failed to show that the IWPCA even applies to the putative

class members' claims. Since the service agreements governing Johnson's and Moore's work for

Defendants contain a choice-of-law provision stating that the agreements shall be governed by

and construed in accordance with the laws of the Commonwealth of Virginia, Diakon argues that

the IWPCA should not apply at all to this dispute.[2]

The Court finds this argument unpersuasive, at least with respect to the propriety of class

certification. The Virginia choice-of-law provision cited by Diakon arguably applies only to

disputes pertaining to performance under the service agreements. This Court has not yet decided

whether those contracts limit actions by the drivers with respect to rights granted them under

Illinois law. That is not a question that must be decided prior to class certification. Rather,

whether this class of drivers may assert a claim under Illinois law is simply another common

question appropriate for determination on a class-wide basis. No party has argued that only

Johnson and Moore had the choice-of-law provision in their agreements; to the contrary,

Plaintiffs allege that the agreements for all drivers were based on the same model, and Diakon

---

[2] Plaintiffs allege that all drivers signed the same model service agreement that was provided to the Court.

has not taken issue with that assertion. To the extent there is a legal question regarding whether

the choice-of-law provision vitiates the class members' rights to relief under the IWPCA,

Defendants may raise that question in a summary judgment motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for Rule 23(b)(3) class certification (Dkt.

No. 133) is granted.

ENTERED:

Dated:  January 23, 2020

_____
Andrea R. Wood
United States District Judge