IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY JOHNSON and DARRYL MOORE, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | No. 16-cv-06776 ) ) |
| DIAKON LOGISTICS, et al., | Judge Andrea R. Wood ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Timothy Johnson and Darryl Moore, on behalf of a certified class of delivery drivers, have sued Diakon Logistics ("Diakon") and William C. Jarnagin, Jr., Diakon's Chairman and Chief Executive Officer ("CEO"), as well as Innovel Solutions, Inc. (formerly known as Sears Logistics Services, Inc. and Sears Roebuck and Co.), alleging violations the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/9. Specifically, Plaintiffs claim that Defendants made unlawful deductions from their wages. Now before the Court are the parties' cross-motions for summary judgment. (Dkt. Nos. 209, 211.)[1] Plaintiffs seek partial summary judgment designating the class members as employees of Diakon for purposes of the IWPCA. Diakon and Jarnagin, on the other hand, seek summary judgment on the ground that a choice-of-law provision in the parties' service agreements precludes the IWPCA claims. Alternatively, Jarnagin contends that he is entitled to summary judgment because there is no evidence that he

---

[1] Innovel Solutions, Inc. and Sears Roebuck and Co. filed a Notice of Suggestion of Bankruptcy on October 15, 2018. (Dkt. No. 142.) As a result of the bankruptcy proceedings, all proceedings in this case against those parties were stayed. *See* 11 U.S.C. § 362. They have not joined in the present cross-motions for summary judgment.

knowingly permitted Diakon to violate the IWPCA. For the reasons explained below, the Court grants Diakon and Jarnagin's motion and denies Plaintiffs' motion as moot.

## BACKGROUND

### I.     Factual Background

The parties dispute most of the facts in this case. As discussed below, the Court does not reach the issues raised by Plaintiffs' motion, as Defendants prevail based on the choice-of-law issue. For that reason, the following facts taken from the parties' summary judgment submissions focus on the facts material to Defendants' motion and are viewed in the light most favorable to Plaintiffs.

Diakon offers supply-chain management services—specifically, last-mile logistics services—for retailers within the United States, including in Illinois. (Defs.' Resp. to Pls.' Statement of Material Facts ("DRPSF") ¶¶ 1–2, Dkt. No. 223.) Diakon delivers furniture and appliances for retailers. (DRPSF ¶ 1.) Among Diakon's customers is Innovel Solutions, a subsidiary of Sears, Roebuck and Co. (*Id.* ¶ 3.)

As part of its business model, Diakon uses drivers, like Plaintiffs, to provide delivery services for its clients. (DPRSF ¶ 4). It does so by contracting with transportation companies pursuant to what it terms independent contractor services agreements and independent contractor carrier agreements (collectively, "Service Agreements"). (Pls.' Resp. to Defs.' Statement of Material Facts ("PRDSF") ¶ 9, Dkt. No. 221.) Companies contracting with Diakon must sign these Service Agreements. (DRPSF ¶ 5.)

The Service Agreements signed prior to February 2015 include a section titled "Governing Law," which states: "This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to conflict of law rules." (PRDSF ¶ 19.) In

2

February 2015, Diakon revised the Service Agreements. (*Id.* ¶ 20.) The post-February 2015 agreements contain a similar choice-of-law provision, which states: "The law of the Commonwealth of Virginia shall govern all interpretations of this Agreement or any rights or liabilities stemming from it or related to it in any such action. The obligations in this paragraph shall survive the termination of the Agreement." (*Id.* ¶ 21.)

Although classified as independent contractors, the drivers are still subject to stringent requirements. (DRPSF ¶ 7.) For instance, the drivers are subject to a dress code, permitted to take only one appliance from a customer's home for each Sears appliance they install, given specified routes and delivery timeframes, and required to return any appliances they retrieve to Diakon's warehouses. (*Id.* ¶¶ 8, 10–11, 18, 24.) The warehouses are located in Romeoville and Granite City, Illinois, and drivers regularly make deliveries in Illinois. (*Id.* ¶ 14). If a customer makes a damage claim in relation to one of these deliveries, Diakon may deduct the amount from the drivers' compensation. (*Id.* ¶ 13.) Diakon also deducts, with or without the driver's consent, for items such as "dropped loads," truck rentals, insurance coverage, and workers compensation. (*Id.* ¶¶ 31–33.)

Jarnagin is currently Diakon's Chairman and, since 2016, its CEO. (PRDSF ¶ 1.) He was President of Diakon from 2003 to 2009, at which point he became Chairman. (*Id.*) Jarnagin is responsible for overseeing Diakon's operations, and his name appears on settlement checks that drivers receive. (*Id.* ¶¶ 2–3.)

## II. Procedural Posture

As Plaintiffs raise the issue of waiver, a brief summary of the relevant procedural history is appropriate. Originally, only Johnson filed suit against Diakon, asserting claims under the IWPCA

and for common law unjust enrichment (Dkt. Nos. 1, 15).[2] Diakon answered the First Amended Complaint ("FAC"), generally denying all allegations. (Dkt. No. 23.) In June 2017, a year after the initial complaint was filed, Plaintiffs filed a Second Amended Complaint ("SAC"), including Jarnagin, and Todd E. Voda, Diakon's Vice President of Operations, as defendants and adding IWPCA claims against Innovel Solutions and Sears, Roebuck and Co.[3] (Dkt. No. 40.) In response to the SAC, Diakon filed a motion to dismiss, arguing that both claims against it were preempted by the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 14501(c), or the Federal Leasing Regulations, 49 C.F.R. Part 376. (Dkt. No. 44.) Additionally, Diakon asserted that, due to the absence of a contract with Johnson individually, as well as his consent to the alleged deductions, the IWPCA did not apply. (*Id.*) Finally, Diakon contended that the existence of the Service Agreements precluded the unjust enrichment claims. In March 2018, the Court granted the motion to dismiss as to the unjust enrichment claims but denied the motion on all other bases. (Dkt. No. 98.)

Shortly thereafter, on April 10, 2018, Plaintiffs filed a Third Amended Complaint ("TAC"). (Dkt. No. 102.) In an oral motion, Plaintiffs voluntarily dismissed the unjust enrichment claims. (Dkt. No. 112.) On May 17, 2018, Diakon filed an answer denying the claims and asserting various affirmative defenses. (Dkt. No. 116.) Diakon did not raise the issue of choice of law, however. (*Id.*) Four months later, on September 18, 2018, before the pre-class certification fact discovery deadline had passed, Diakon contacted Plaintiffs and indicated its intention to file a motion to amend its answer to add the defense. (Pls.' Mem. in Supp. of Mot. for Summ. J., Ex. 1,

---

[2] The initial complaint and the First Amended Complaint asserted the same two claims. Johnson filed the First Amended Complaint before Diakon responded to the initial Complaint.

[3] Voda was not named as a defendant in the Third Amended Complaint.

4

Email Correspondence, Dkt. No. 214-1.) Plaintiffs' counsel initially indicated that they would oppose the motion on the grounds of futility, but ultimately responded that they agreed that Diakon had not waived the defense. (*Id.*) Ultimately, Diakon did not amend its answer.

In November 2018, Diakon raised the choice-of-law issue while opposing Plaintiffs' motion for class certification. Specifically, Diakon asserted that Plaintiffs had failed to establish that the IWPCA even applied to the putative class claims, in part due to the Virginia choice-of-law provision. (Dkt. No. 143.**)** Initially, Plaintiffs' reply brief included a claim that Diakon had "arguably waived" the choice-of-law defense by "fully litigating this matter for more than two years." (Pls.' Reply in Supp. of Mot. for Class Cert. at 3 n.2, Dkt. No. 153). In response, Diakon's counsel emailed Plaintiffs' counsel and noted that the footnote "directly contradict[ed] [Plaintiffs'] agreement below [in the prior email] that we have not waived the argument." (DRPSF, Ex. Q, Email re Mot. to Am. Answer Dkt. No. 223-17.) Plaintiff's counsel promptly responded that Diakon was "right" and they had "simply forgot[ten] about" the prior agreement that the defense had not been waived. (*Id.*) Plaintiffs swiftly amended their reply brief to omit the issue of waiver. (Dkt. No. 154.) The Court subsequently granted Plaintiffs' motion for class certification and certified a plaintiff class pursuant to Federal Rule of Civil Procedure 23(b)(3) consisting of "[a]ll delivery drivers who (1) signed a Service Agreement with Diakon, (2) were classified as independent contractors, and (3) who performed deliveries for Diakon and Sears in Illinois between June 28, 2006 and the present." (Mem. Op. & Order Granting Class Cert. at 5, Dkt. No. 185.) In ruling on the issue of class certification, the Court made no determination as to whether the choice-of-law clause barred Plaintiffs' claims. Instead, the Court merely noted that the question was appropriate for determination on a class-wide basis and therefore better raised in a motion for summary judgment. (*Id.* at 15–16.)

**DISCUSSION**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if, considering the record in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Dynergy Mktg. & Tfrade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011).

Plaintiffs have asserted claims under the IWPCA, alleging the unlawful deduction of wages. 820 ILCS 115/9. The IWPCA "applies to all employers and employees" in Illinois and defines wages as "any compensation owed an employee by an employer pursuant to an employment contract or agreement." 820 ILCS 115/1–115/2. Under the IWPCA, "employer" covers not just corporate employers, but also any officers of a corporation "who knowingly permit" violations. 820 ILCS 115/13. The IWPCA also has a broad definition of "employee," using a conjunctive three-part test. 820 ILCS 115/2; *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016). An individual may only be classified as an independent contractor, and therefore exempt from the IWPCA, if they (1) are free from the employer's control and direction over the performance of their work, (2) perform work outside the employer's usual course of business, and (3) are engaged in an independently established trade, occupation, profession, or business. 820 ILCS 115/2.

Here, both Plaintiffs and Defendants Diakon and Jarnagin move for summary judgment. Diakon and Jarnagin each seek summary judgment on the basis that the Virginia choice-of-law provisions in the parties' Service Agreements precludes Plaintiffs and the Class from pursuing their IWPCA claims. Additionally, Jarnagin contends that, even if the claims are not precluded by the choice-of-law provision, there is no evidence he knowingly permitted Diakon to violate the

6

IWPCA and summary judgment in his favor is appropriate. For their part, Plaintiffs seek partial summary judgment on the question of employee classification, seeking an order that they and other class members are employees of Diakon under the IWPCA. Because this case can be resolved on the issue of the Virginia choice-of-law provision, the Court need not address Plaintiffs' motion.

### I. Diakon's Potential Waiver of the Choice-of-Law Defense

The Court first addresses Plaintiffs' claim that Diakon has waived any potential choice-of-law defense. It is true that a party may waive a choice-of-law argument by failing to assert it. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014); *Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995) ("[C]hoice of law, not being jurisdictional, is normally . . . waivable."). Courts typically find that a party has waived a choice-of-law argument only in narrow circumstances, such as when the party has "explicitly submitted" to the law of the forum state or has "unduly delayed" in raising the issue. *Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2017 WL 5178792, at *4 (N.D. Ill. Nov. 8, 2017) (citing *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009); *Whirlpool Fin. Corp. v. Sevaux*, 96 F.3d 216, 221 (7th Cir. 1996)). The principle of waiver is meant to protect against gamesmanship by the parties; a party is "not entitled to get a free peek at how his dispute will shake out under Illinois law and, when things don't go his way, ask for a mulligan under the laws of a different jurisdiction." *Lott*, 556 F.3d at 568.

Courts, therefore, ordinarily find waiver only when the choice-of-law issue is first raised at a late stage in the proceedings and after the party has seemingly exhausted other arguments in their favor. *See, e.g., McCoy*, 760 F.3d at 684 (finding that a party waived the choice-of-law issue by only raising it over two years into the litigation, after it had benefited from Illinois procedural

7

law, did not object to the application of Illinois substantive law in its motion for a preliminary injunction, and relied entirely on Illinois law in defending its counterclaims against a motion for judgment on the pleadings); *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012) (holding that by waiting until trial to address choice of law while asserting only Illinois law in their briefs, the defendants waived the issue); *Woodward v. Victory Recs., Inc.*, No. 14 CV 1887, 2014 WL 2118799, at *5 (N.D. Ill. May 21, 2014) (determining that the plaintiffs could not raise choice of law in a dispute over attorney-client privilege after failing to do so in previous briefings on the same issue).

In contrast, courts often find simply failing to raise a choice-of-law argument in the pleadings, alone, insufficient to constitute waiver. *See Dolmage*, 2017 WL 5178792, at *4 (finding no waiver of a choice-of-law argument when the defendant had explicitly stated in their motion to dismiss that they assumed, but did not otherwise contend, that Illinois law applied and raised the issue at both class certification and summary judgment); *Cornell v. BP Am., Inc.*, No: 14 C 2123, 2015 WL 5766931, at *4 (N.D. Ill. Sep. 30, 2015) (holding that the defendant had not waived a choice-of-law defense against claims under the IWPCA by waiting until its motion for summary judgment to raise the issue). And, in the few cases where a court has found waiver of a choice-of-law argument based on the pleadings, the party has affirmatively availed themselves of the law of the forum state. *See CMFG Life Ins. Co. v. RBS Sec., Inc.*, No. 12-cv-037-wmc, 2014 WL 3696233, at *2, 3–5 (W.D. Wis. July 23, 2014) (holding that a defendant waived the right to raise a choice-of-law argument after they filed an initial motion to dismiss relying on a Wisconsin statute of limitations and then brought a second motion to dismiss on the grounds that New York law applied).

Plaintiffs contend that, because Diakon failed to raise the possibility that Virginia law might govern during its initial motion to dismiss or to file an earlier motion for summary judgment on the issue, Diakon has waived its choice-of-law argument. But Plaintiffs have not demonstrated that this case falls under one of the narrow circumstances in which it would be appropriate to find waiver.

First, Diakon has not explicitly submitted to Illinois law. Unlike in *Lott*, there has been no express statement by Diakon indicating their assent to Illinois law. *Lott*, 556 F.3d at 567 (finding explicit submission when the plaintiff stated in the briefings that he "agreed with the Defendants that Illinois law governs this dispute"). Additionally, at no point did Diakon rely *exclusively* on Illinois law in its briefings. Indeed, Diakon's motion to dismiss the Second Amended Complaint focused primarily on federal preemption issues, specifically arguing that the Federal Aviation Administration Authorization Act and Federal Leasing Regulations preempted the application of Illinois law to Plaintiffs' claims. Moreover, Diakon did not affirmatively avail itself of Illinois law, but instead merely contended that the IWPCA was not applicable. Simply put, the record does not reflect that Diakon "sought one ruling under Illinois law, lost, and now seeks a different ruling" under a new state's laws. *Cornell*, 2015 WL 5766931, at *4.

This is also not a case where Diakon has only raised the question of choice of law at a late stage in the proceedings. Plaintiffs make much of the fact that four years elapsed between the initial complaint and Diakon's motion for summary judgment, implying that Diakon has failed to bring up the choice-of-law provision until this late date in the proceedings. Plaintiffs' narrative, however, is incomplete. It is true that Diakon did not raise the choice-of-law argument in its initial motion to dismiss the SAC or in its answer to the TAC.[4] But Plaintiffs have not spent four years

---

[4] Diakon did not file a motion to dismiss the TAC.

9

unaware of Diakon's intent to raise this issue. On September 17, 2018, four months after Diakon filed its answer to the TAC, Diakon's counsel emailed Plaintiffs' counsel to notify them that Diakon intended to file a motion to amend its answer to include a choice-of-law affirmative defense. Ultimately, Diakon did not amend its answer, but only after receiving a written assurance from Plaintiffs' counsel that the defense was not waived.

Importantly, nothing in the record suggests that Plaintiffs believed that Diakon had already waived the choice-of-law argument at the time it sought to amend its answer. Plaintiffs now claim that they agreed only that Diakon did not waive a potential choice-of-law defense by failing to include it as an affirmative defense, not that Diakon had not already waived the argument by failing to raise it in their initial answers or motion to dismiss. But contemporaneous email correspondence between the parties makes clear that Plaintiffs opposed the defense on the grounds of futility, not waiver.[5] And following pushback from Diakon, Plaintiffs' counsel unequivocally stated "[y]es, I agree that you have not waived the defense." (Pls.' Mem. in Supp. of Mot. for Summ. J., Ex. 1, Email Correspondence.) Given this exchange, there is no indication that Plaintiffs would have even raised the issue of waiver had Diakon sought to amend its answer formally. Instead, Plaintiffs demonstrated their willingness to engage with the merits of the choice-of-law issue.

Moreover, Diakon did raise the defense before the present motion for summary judgment, in its opposition to class certification. And again, after Plaintiffs raised the issue of waiver in their reply to Diakon's opposition to class certification, Diakon reached out to Plaintiffs' counsel to remind them of their earlier agreement. Plaintiffs quickly filed an amended reply, omitting the contested footnote. In fact, Plaintiffs proceeded to brief the substance of the choice-of-law issue,

---

[5] Specifically, Plaintiffs' counsel wrote "We oppose because of futility. This same issue has been decided countless times. i.e. Lasership; Snyder-Lance." (Email Correspondence, Dkt. No. 214-1, Ex. 1.)

asserting that the choice-of-law provision was inapplicable and unenforceable. (Pls.' Amended Reply in Supp. of Mot. for Class Cert. at 5–7, Dkt. No. 154.) Indeed, Plaintiffs relied upon many of the same arguments they now raise. If anything, at this point it is Plaintiffs, not Diakon, who let the case continue without any indication that they would dispute Diakon's right to raise the issue of choice-of-law.

The Court therefore declines to find, under these circumstances, that Diakon has waived the right to raise its choice-of-law defense.

## II. Applicability of the Choice-of-Law Provision

Diakon contends that the Virginia choice-of-law provisions contained within the Service Agreements preclude Plaintiffs' claim under the IWPCA. Plaintiffs attack this position on two grounds. First, Plaintiffs assert that the IWPCA claim, as a statutory claim, falls outside the coverage of the choice-of-law provision. Second, Plaintiffs maintain that even if the choice-of-law provision applies to the IWPCA claims, Illinois law would find the provision unenforceable as against public policy. Both sides acknowledge, however, that if Virginia law governs, Plaintiffs will be unable to prevail on claims under the IWPCA.

### A. Whether the IWPCA Claims Fall Under the Choice-of-Law Provision

Generally, a federal court sitting in diversity applies the choice-of-law rules of the forum state to determine which state's substantive law applies. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496, 61 S. Ct. 1020 (1941)). To determine the applicability of a choice-of-law provision in a contract to a particular claim, Illinois courts follow a three-step approach. *Medline Indus., Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 863 (N.D. Ill. 2002). First, the court must "determine whether the parties intended that all claims between them be subject to the contract's choice of

law clause." *Precision Screen Machs. Inc. v. Elexon, Inc.*, No. 95 C 1730, 1996 WL 495564, at *2 (N.D. Ill. Aug. 28, 1996). Next, if the choice-of-law clause is not meant to govern all claims, the court must "determine whether the claims are dependent upon the agreement and therefore subject to the Choice-of-Law Clause." *Medline*, 230 F. Supp. 2d at 863; *see also Interclaim Holdings Ltd. v. Ness, Motley, Loadholt, Richardson & Poole*, 298 F. Supp. 2d 746, 762 (N.D. Ill. 2004) ("[T]ort claims . . .that are dependent upon a contract are subject to the contract's choice-of-law provision regardless of the breadth of the clause."). Finally, if the choice-of-law clause is "not applicable to the claims, the court will follow Illinois law in determining which jurisdiction's substantive law applies." *Medline*, 230 F. Supp. 2d at 863.

The parties do not dispute that the choice-of-law provision contained within the Service Agreements is limited to those claims that arise out of the Agreement itself and are not intended to govern all claims between them. Consequently, the question is whether Plaintiffs' IWPCA claim is "dependent" upon the Services Agreement. The issue of whether a claim is "dependent" upon a contract most often arises in the context of tort claims. In that context, "courts examine whether: (1) the claim alleges a wrong based on the construction and interpretation of the contract; (2) the tort claim is closely related to the parties' contractual relationship; or (3) the tort claim could not exist without the contract" to determine the issue. *Amakua Dev. LLC v. Warner*, 411 F. Supp. 2d 941, 955 (N.D. Ill. 2007). Although a violation of the IWPCA is a statutory claim, the same analytical approach should apply to determine whether it is dependent upon a contract. *See FDIC v. Citizens Bank & Tr. Co. of Park Ridge*, 592 F.2d 364, 369 (7th Cir. 1979) ("Liability for breach of a duty imposed by statute or case law and not by contract is in tort."); *Cima v. WellPoint Health Networks, Inc.*, 556 F. Supp. 2d 901, 906 (S.D. Ill. 2008) ("In general . . . claims arising from breaches of duties imposed by law sound in tort.").

12

Here, Plaintiffs' claims are predicated on violations of the IWPCA. "The IWPCA provides employees with a cause of action against employers for the timely and complete payment of earned wages." *Enger v. Chi. Carriage Cab Co.*, 812 F.3d 565, 568 (7th Cir. 2016) (citing 820 ILCS 115/3). "[T]o state a claim under the IWPCA, the [plaintiff is] required to demonstrate that they are owed compensation from defendants pursuant to an employment agreement." *Id*. Because an IWPCA claim requires the existence of an agreement, courts faced with IWPCA claims stemming from employment contracts containing choice-of-law clauses with similarly narrow language as that found here have concluded that the parties' choice-of-law agreement nonetheless governs. Indeed, the court in *Warwick v. Schneider Nationall Inc.*, No. 20-C-1556, 2021 WL 1851272 (E.D. Wis. May 10, 2021), considered this very issue. There, the plaintiff had signed an independent contractor agreement with the defendant to render freight transportation services. *Id.* at *1. The agreement contained a choice-of-law clause, dictating that the agreement would be "governed by" and "construed and enforced in accordance with, the substantive laws of Wisconsin." *Id*. Just as here, the plaintiff argued that he had been misclassified as an independent contractor and brought an action under the IWPCA alleging unlawful deductions. *Id*. The defendant, as Diakon does now, asserted that the IWPCA claims had to be dismissed pursuant to the choice-of-law provision, which dictated that Wisconsin law, not Illinois law, governed. *Id.* at *2. Determining that the plaintiff's claims were "dependent upon the Agreements" and noting that the "terms of the Agreements fall within the scope of the choice-of-law provisions," the *Warwick* court found that the choice-of-law provision applied to bar plaintiff's IWPCA claims. *Id.* at *3.

In this case, Plaintiffs rely solely upon the Service Agreements to support their IWPCA claims. Although Plaintiffs point out that a formal contract is not required to bring a claim under the IWPCA, and more general agreements to pay wages may suffice, they have not provided any

13

evidence of an agreement with Diakon outside of the Service Agreements. *See Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 659–62 (N.D. Ill. 2012) ("Illinois courts have held that an employment agreement need not be a formally negotiated contract and that parties may enter into an "agreement" without the formalities and accompanying legal protections of a contract." (quoting *Landers-Scelfo v. Corp. Office Sys., Inc.*, 827 N.E.2d 1051, 1059 (Ill. App. Ct. 2005)). In fact, Plaintiffs have achieved certification of a class comprising all drivers who ***signed a service agreement with Diakon***. ((Mem. Op. and Order Granting Class Cert. at 5, Dkt. No. 185 (emphasis added).) At the summary judgment stage, that it is possible for a plaintiff to bring an IWPCA claim without a formally negotiated agreement is irrelevant unless Plaintiffs provide some evidence that such an agreement exists. They have not done so. In sum, Plaintiffs clearly rely upon the Service Agreements to support their IWPCA claim. Thus, because Plaintiffs' IWPCA claims would not exist absent the Service Agreements, they are dependent upon that contract and correspondingly subject to its choice-of-law provisions.

Plaintiffs attempt to avoid this outcome by insisting that the IWPCA claim is a separate and independent statutory wage claim. To support this position, Plaintiffs rely on out-of-Circuit cases in which courts have found that similar choice-of-law clauses did not cover statutory wage claims. *See, e.g.*, *Portillo v. Nat'l Freight, Inc.*, 323 F. Supp. 3d 646, 655–58 (D.N.J. 2018) (concluding that neither the Massachusetts Wage Act nor the New Jersey Wage Payment Law claims were encompassed by a choice-of-law provisions which covered disputes arising from "this Agreement"). These cases, however, are inapposite. Unlike the IWPCA, the statutes examined in those cases do not require the existence of a contract or agreement. *See* N.J. Stat. Ann. § 34:11-4.10 (creating a cause of action if "an employer fails to pay the full amount of wages to an employee agreed to or required by" New Jersey law). Claims brought under those statutes,

14

therefore, need not implicate the terms of any agreement. But, as discussed above, without a contract or agreement, there can be no IWPCA claims at all. Thus, the IWPCA claims are dependent upon the Service Agreements and subject to their choice-of-law provisions.

### B. Whether the Choice-of-Law Provision is Unenforceable as Against Public Policy

So long as a contract is valid, Illinois courts will typically apply any choice-of-law clause to disputes arising from the contract. *Medline*, 230 F. Supp. 2d at 862 (citing *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996)); *see also Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E. 177, 194 (Ill. 2002) ("Generally, choice of law provisions will be honored."). However, following the approach under the Restatement (Second) of Conflict of Laws § 187, if such a provision "would **both** violate fundamental Illinois public policy **and** Illinois has a materially greater interest in the litigation than the chosen State," courts will find it unenforceable. *Smurfit Newsprint Corp. v. S.E. Paper Mfg.*, 368 F.3d 944, 949 (7th Cir. 2004) (quoting *English Co. v. Northwest Envirocon, Inc.*, 663 N.E.2d 448, 452 (Ill.1996)).

Plaintiffs contend that the application of the Virginia choice-of-law provision would violate public policy. Specifically, they claim that Illinois has a vested public policy interest in applying the IWPCA to workers within its borders, especially when the alternative choice of law contains no analogous wage and hour statute. In essence, Plaintiffs take the position that the choice-of-law clause is unenforceable as effectively waiving their rights under the IWPCA. In Plaintiffs' view, this is against Illinois's strong public policy in protecting the rights of Illinois employees, and thus unenforceable under the approach dictated by Section 187 of the Restatement.

Yet courts have consistently found that applying similar choice-of-law clauses in suits arising under the IWPCA does not violate public policy by effectively waiving a party's rights

under the statute. Instead, courts note that such choice-of-law clauses, rather than waiving a party's rights, serve as a "selection of governing rights." *See Warwick*, 2021 WL 1851272, at *3 (quoting *Lubinski v. Hub Grp. Trucking, Inc.*, 690 F. App'x 377, 379 (6th Cir. 2017)). Indeed, this Court has explicitly rejected the argument that a choice-of-law clause is unenforceable as against Illinois public policy because it essentially waives a plaintiff's rights under the IWPCA. *Ayyash v. Horizon Freight Sys., Inc.*, No. 15-cv-10296, 2018 WL 5994755, at *4–5 (N.D. Ill. Nov 15, 2018); *see also Cornell*, 2015 WL 5766931, at *4–5 (rejecting the argument that a choice-of-law provision impermissibly waives a plaintiff's rights under the IWPCA).

Even when the selected state's choice of law does not provide similar protections as those granted under the IWPCA, courts have found that the application of the provision does not violate Illinois public policy. For instance, in *Shaw v. First Communications, LLC*, No. 19-cv-08070, 2021 WL 131433 (N.D. Ill. Jan. 14, 2021), the district court rejected the argument that an Ohio choice-of-law provision violated public policy simply because Ohio does not provide the same protections to employees as the IWPCA. *Id.* at *3–4; *see also Warwick*, 2021 WL 1851272, at *3 ("In addition, the absence of a Wisconsin statute identical to the IWPCA is not enough on its own to prove that the choice-of-law provisions frustrate public policy.") In part, this is because a party's inability to bring claims under the IWPCA does not foreclose the possibility of any recovery. As other courts have observed, plaintiffs may still seek relief under the FLSA or based on applicable common law theories, such as unjust enrichment. *See Lubinski v. Hub Group Trucking, Inc.*, No. 2:14-cv-02843-JPM-dkv, 2015 WL 10732716, at *4 (W.D. Tenn. Sep. 22, 2015), *aff'd* 690 F. App'x 377 (6th Cir. 2017) (noting that "while it is clear that under Tennessee law, [a p]laintiff would not have a claim for IWPCA violations, whereas he would have a claim in Illinois, [a p]laintiff is not without recourse," as "Tennessee common law permits unjust

16

enrichment claims"). Hence, Plaintiff's argument that the choice-of-law provision is invalid as against public policy fails.

### III. Jarnagin's Liability Under the IWPCA

Jarnagin also seeks summary judgment in his favor on the IWPCA claims. These claims, however, are derivative of those against Diakon and therefore also subject to the choice-of-law provision. *See Catania v. Local 4250/5050 of Comm. Workers of Am.*, 834 N.E.2d 966, 975–6 (Ill. Ct. App. 2005) (describing how, although "a plaintiff may plead and prove a cause of action under the [IWPCA] against both her employer and its agent who knowingly permitted the employer to violate the act," she may only obtain one recovery "as the defendants represent a single, unified, employer"). As a result, the Court need not address the question of whether the Plaintiffs have presented enough evidence to demonstrate the existence of a genuine question of a material fact as to whether Jarnagin "knowingly permitted" the alleged wage violations.

### CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Dkt. No. 211) is granted. Because the choice-of-law provision dictates that Virginia law, not Illinois law, governs the instant dispute, Plaintiffs cannot prevail on claims under the IWPCA. The Court therefore declines to address the question of whether Plaintiffs are properly classified as employees under the IWPCA. Plaintiffs' motion for summary judgment (Dkt. No. 209) is denied as moot.

ENTERED:

Dated: September 30, 2021

_____
Andrea R. Wood
United States District Judge

17