**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| TIMOTHY JOHNSON, and DARRYL MOORE, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 16-cv-06776 |
| v. | |
| DIAKON LOGISTICS, and WILLIAM C. JARNAGIN, JR. | Judge Andrea R. Wood<br>Magistrate Judge M. David Weisman |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# **TABLE OF CONTENTS**

I. Introduction ................................................................................................................ 1

II. Factual Background.................................................................................................... 3

III. Legal Standard............................................................................................................ 5

IV. Argument.................................................................................................................... 5

    A. The IWPCA Applies to All Work Performed by Plaintiffs and
       Class Members..................................................................................................... 5

    B. The Deductions Taken by Diakon in Reliance on the Independent
       Contractor Agreements and Promissory Notes were Not
       Authorized under the IWPCA............................................................................ 8

        1. The Deductions Taken by Diakon were Not for the
           Delivery Drivers' Benefit ......................................................................... 9

        2. The Service Agreement and Promissory Notes Did Not
           Constitute Express Written Consent at the Time
           Deductions were Made .......................................................................... 10

V. Conclusion................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

Adams v. Catrambone
    359 F.3d 858 (7th Cir. 2004) ............................................................................... 6

Alcalan v. Landscape Concepts Management, Inc.
    No. 07-CH-3056 (Ill. Cir. Ct. Aug. 23, 2011) ............................................... 12

Awuah v. Coverall N. Am., Inc.
    952 N.E.2d 890 (Mass. 2011) ........................................................................ 10

Balderrama-Baca v. Clarence Davids and Co.
    2019 WL 1057193 (N.D. Ill. Mar. 6, 2019)....................................... 2, 9, 11, 12

Calderon v. Witvoet
    764 F. Supp. 536 (C.D. Ill. 1991) ................................................................... 11

Carrasco v. Freudenberg Household Products LP
    2019 WL 5456145 (N.D. Ill. Oct. 24, 2019) ................................................... 6

FirstMerit Bank, N.A. v. 2200 N. Ashland, LLC
    2014 WL 6065817 (N.D. Ill. Nov. 13, 2014) .................................................. 5

Groark v. Thorleif Larsen & Son, Inc.
    231 Ill. App. 3d 61 (1992) .............................................................................. 10

Johnson v. Diakon Logistics
    2018 WL 1519157 (N.D. Ill. Mar. 28, 2018).................................................. 13

Kim v. Citigroup, Inc.
    368 Ill. App. 3d 298 (Sept. 29, 2006) ........................................................ 9, 12

Lexington Ins. Co. v. Rugg & Knopp, Inc.
    165 F.3d 1087 (7th Cir.1999) .......................................................................... 5

Miller v. J.M. Jones Co.
    198 Ill. App. 3d 151 (1990) .............................................................................. 9

NPF Racing Stables, LLC v. Aguirre
    2020 WL 1322847 (N.D. Ill. Mar. 20, 2020)................................................... 8

Palar v. Blackhawk Bancorporation, Inc.
    2014 WL 4087436 (C.D. Ill. Aug. 19, 2014).................................................. 2

Spaulding v. Abbott Laboratories
    2010 WL 4822894 (N.D. Ill. Nov. 22, 2010) ................................................. 6

Swavely v. Freeway Ford Truck Sales, Inc.
  298 Ill. App. 3d 969 (1998) ............................................................................................... 9

Torres v. Nation One Landscaping, Inc.
  2016 WL 7049048 (N.D. Ill. Dec. 5, 2016) ................................................................. 9, 11

Tsybikov v. Dovgal
  2022 WL 1238853 (N.D. Ill. Apr. 27, 2022) ................................................................... 7

Vendetti v. Compass Envt'l, Inc.
  2006 WL 3694852 (N.D.Ill.Dec.14, 2006) ...................................................................... 6

Watts v. ADDO Management, L.L.C.
  420 Ill. Dec. 501 (Ill. App. (1st) 2018) .................................................................... 5, 6, 7

Yata v. BDJ Trucking Co.
  2018 WL 3303290 (N.D. Ill. July 5, 2018) ...................................................................... 7

**Statutes**

56 Ill. Admin Code 300.720 ............................................................................... 2, 12, 13

56 Ill. Admin Code § 300.71 ........................................................................................... 9

56 Ill. Admin Code 300.440 .................................................................................... 5, 6, 7

56 Ill. Admin. Code § 300.280 ....................................................................................... 9

56 Ill. Admin. Code § 300.840 ..................................................................................... 11

820 Ill. Com. Stat. 305 ................................................................................................. 10

820 Ill. Comp. Stat. 115 ......................................................................................... passim

**Rules**

Fed. R. Civ .P. 56(c) ....................................................................................................... 5

I.    INTRODUCTION

Plaintiffs Timothy Johnson and Darryl Moore, through their counsel, hereby move on behalf of the certified class for summary judgment against Defendants Diakon Logistics ("Diakon") and Willian Jarnagin ("Jarnagin") (collectively, "Defendants"). Plaintiffs seek a ruling that: (1) the IWPCA applies to all work performed by class members in this case and (2) that the deductions taken from Plaintiffs' and class members' pay were in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115 *et seq.* For the reasons set forth below, and in the accompanying Statement of Facts, it is undisputed that the IWPCA applies to all the work performed by Plaintiffs and class members in this case, making summary judgment in Plaintiffs' favor appropriate. It is likewise undisputed that the deductions Diakon took from Plaintiffs' and class members' pay were unlawful under the IWPCA, and Plaintiffs are entitled to summary judgment on this issue.

Diakon has argued, in opposing Plaintiffs' motion for class certification, that a portion of the class members' work in this case takes place outside of Illinois – specifically, routes originating from the Granite City warehouse often take drivers outside of Illinois. See Dkt. 143, p. 16 ("transportation companies loading product from Innovel's Granite City location performed approximately 80 percent of the[ir] deliveries in Missouri.") (internal citation omitted). They have also argued that a number of the class members lived outside of Illinois. However, the caselaw makes clear that all of Plaintiffs' and class members' work is subject to IWPCA coverage, particularly where, as here, Plaintiffs and class members started each workday in Illinois.

Second, Defendants are likely to rely on the Service Agreements and the promissory notes signed by Plaintiffs and class members to argue that a number of the deductions made form Plaintiffs' and class members' pay were authorized and therefore not in violation of the IWPCA.

1

The IWPCA contains stringent requirements for deductions, including, in particular, that deductions must be "made with the **express written consent** of the employee **at the time** the deduction is made[.]" 820 Ill. Comp. Stat. 115/9. A cursory look at the Service Agreement and promissory note (see Dkts. 45.1 and 45.2) makes clear that neither of these documents constitutes proper authorization for deductions within the meaning of the IWPCA. First, while these documents provide for various categories of deductions, with the exception of deductions for insurance, neither the Service Agreement nor the promissory notes actually quantify the dollar amounts for the deductions to be taken out of Plaintiffs' and class members' pay. This means, in effect, that Plaintiffs and class members were not given advance notice of most of the deductions which were taken from their pay, and did not give express consent to these deductions. Second, and more importantly, neither the Service Agreement nor the promissory notes meet the standard for ongoing written consent to the deductions, as they do not provide any mechanism for delivery drivers to revoke their consent to the deductions.[1] See 56 Ill. Adm. Code 300.720(b). To conclude that the authorizations in the Service Agreement and the promissory note satisfy the IWPCA would contravene the plain language of the statute and the statute's broad remedial purpose, which is to protect Illinois workers' rights to recoup all of their wages. See Balderrama-Baca v. Clarence Davids and Co., 2019 WL 1057193, at *6 (N.D. Ill. Mar. 6, 2019); Palar v. Blackhawk Bancorporation, Inc., 2014 WL 4087436, at *4 (C.D. Ill. Aug. 19, 2014). Defendants cannot rely on either of these documents to argue that deductions in this case were authorized.

---

[1] The IWPCA also requires that written authorizations of deductions be "freely given." 820 Ill. Comp. Stat. 115/9. The Service Agreement in this case is a sham agreement that categorizes drivers as independent contractors when in fact they are employees of Diakon within the meaning of the IWPCA, 820 Ill. Comp. Stat. 115/2. Authorizations contained in these agreements, which Diakon requires drivers to sign as a precondition to employment, cannot be considered to be freely given.

Plaintiffs therefore move for summary judgment and ask the Court to declare that the IWPCA applies to all work performed by Plaintiffs and class members in this case, and that the deductions Diakon took from Plaintiffs' and class members' pay in reliance on the Service Agreements and promissory notes were not authorized within the meaning of the IWPCA, and were therefore unlawful.

## II.  FACTUAL BACKGROUND

Defendant Diakon Logistics ("Diakon") provides deliveries of furniture and appliances in a number of states, including Illinois. SOF ¶ 1. Diakon has provided delivery for Innovel Solutions, a subsidiary of Sears, Roebuck and Co., in Illinois for several years. SOF ¶ 2. Plaintiffs and class members picked up goods and performed deliveries for Diakon out of two warehouses in Illinois: one in Romeoville and one in Granite City. SOF ¶ 3. Plaintiffs were required to report to the Romeoville warehouse at 6AM each morning to attend morning meetings, led by both Sears and Diakon personnel, and inspect and load their merchandise for the day. SOF ¶ 4. After the morning meeting, Plaintiffs picked up their daily manifest sheets, and were "checked out" by an employee at the warehouse before leaving for the day. SOF ¶ 5. Plaintiffs also often came back to the Romeoville warehouse at the end of the day to drop off merchandise. SOF ¶ 6. Both of the Plaintiffs were interviewed, and signed their Service Agreement with Diakon, in Romeoville. SOF ¶ 8.

To provide deliveries for Diakon, Plaintiffs and class members were required to sign a Service Agreement with Diakon.[2] SOF ¶ 7. Plaintiffs and class members were also required to sign promissory notes listing a total dollar amount Diakon may take from their pay. SOF ¶ 9. The Service Agreement provided that Diakon would take a performance bond in the amount of

---

[2] See Dkts. 45.1, Dkt. 45.2.

3

$5,000.00 from the driver, and would take various deductions from that amount. Dkt. 45.1, p. 4, Section 7; Dkt. 45.2, p.4, Section 7. Exhibit A to the Service Agreement in turn listed various categories of deductions, such as "loss and damages" and the purchase or rental of "products, equipment or services" from Diakon, but did not list any amounts associated with these deductions. See Dkt. 45.1 at p. 7; Dkt. 45.2 at p. 7. Similarly, an "Authorization to Deduct" included with the settlement listed several items, such as "Truck Rentals", "Truck Fuel", "Uniforms,", and "Truck Washing", among others, but did not include any dollar amounts. Dkt. 45.1, p. 13; Dkt. 45.2, p. 12. The only deductions in the Service Agreement which contained specific dollar amounts were those associated with insurance (see Insurance Checklist at Dkt. 45.1, pp. 10-11; Dkt. 45.2, p, 10). While the contractor signed an authorization to deduct the listed insurance amounts from his pay, the authorization did not contain any option for the driver to revoke his consent. Dkt. 45.1 at p. 12; Dkt. 45.2 at p. 11.

The promissory notes provided that the delivery driver would pay thousands of dollars to Diakon (presumably to cover the performance bond identified in the Service Agreement). See Dkt. 45.1, p. 14; Dkt. 45.2, p. 13. However, the promissory notes also did not itemize the payments the driver had to make toward this reserve, nor did it provide any mechanism for the driver to revoke his consent to what amounted to a deduction from his pay. Id. Diakon also sometimes used a supplemental promissory note for deducting customer damage claims from drivers' pay. See, e.g., Ex. 1 to Plaintiffs' SoF.

Diakon took various deductions out of the drivers' pay for such items as problem deliveries, "dropped loads", customer damage claims, truck rentals, insurance coverage, and worker's compensation coverage. SOF ¶ 10. In many instances, the drivers did not know the amount of the

4

deduction until it was taken out of their pay. SOF ¶ 11. Whether or not Plaintiffs and class members consented to a given deduction, it still got taken out of their pay at the end of the week. SOF ¶ 12.

### III. LEGAL STANDARD

"Summary judgment is appropriate when the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FirstMerit Bank, N.A. v. 2200 N. Ashland, LLC, 12 C 572, 2014 WL 6065817, at *3 (N.D. Ill. Nov. 13, 2014) (citing Lexington Ins. Co. v. Rugg & Knopp, Inc., 165 F.3d 1087, 1090 (7th Cir.1999); Fed. R. Civ .P. 56(c)).

### IV. ARGUMENT

#### A. The IWPCA Applies to All Work Performed by Plaintiffs and Class Members

Defendants have argued that part of the work performed by Plaintiffs and class members in this case took place outside of Illinois, and, as a result, would not be subject to IWPCA coverage. See Dkt. 143, p. 16. The Court preliminarily rejected this argument in its class certification ruling, explaining that the fact "[t]hat certain class members performed a substantial amount of work outside Illinois, as Diakon contends, does not matter so long as those drivers *also* performed sufficient work *in* Illinois." Dkt. 185, p. 8 (emphasis in original). In conformance with well-established Illinois caselaw, Plaintiffs now seek an affirmative summary judgment ruling that the IWPCA applies to all work performed by Plaintiffs and class members in this case – including work that took place outside of Illinois.

Illinois caselaw makes clear that the IWPCA has wide-reaching coverage. In light of the 2014 amendment to 56 Ill. Adm. Code 300.440 and the decision in Watts v. ADDO Management, L.L.C., 420 Ill. Dec. 501, 506 (Ill. App. (1st) 2018), it is clear that the IWPCA applies to **all** work

5

performed by **all** class members.³ 56 Ill. Admin Code 300.440 (a) provides that "[t]he phrase 'in this state' as used in the Act does not exclude entities physically situated outside the State of Illinois. An employer or employee, to be 'in this state' need not have residency in this State. An officer or agent need not to be physically present in order to be regarded as 'in this state' for purposes of jurisdiction under the Act." The Watts decision applying this regulatory guidance, makes clear that "the Wage Act's application is not limited to any specific quantum of work performed in Illinois but, in fact, may apply in certain circumstances **even where all of the work is performed outside of this state**." Id. ⁴ Thus, the applicability of the IWPCA "does not involve the consideration of the percentage of work performed by Illinois employees inside Illinois." Id. Based on the decision in Watts, there is no need for a "calculation of the percentage of work performed… in Illinois" in order to determine that the IWPCA applies in this case. Watts, 97 N.E.3d at 82.

It is likewise well-established that individuals who are not residents of Illinois are subject to IWPCA coverage. See, e.g., Adams v. Catrambone, 359 F.3d 858, 866 (7th Cir. 2004) ("The Wage Act applies to nonresidents who work in Illinois for an Illinois employer"); 56 Ill. Adm.

---

³ Carrasco v. Freudenberg Household Products LP, 2019 WL 5456145, at *3 (N.D. Ill. Oct. 24, 2019) (citing Watts, 2018 IL App (1st) 170201, ¶¶ 18–19 ("Illinois courts look to regulations issued by Illinois's Director of Labor for guidance when interpreting the Illinois Wage Payments and Collections Act").

⁴ Earlier cases, which predate the amendment to the Administrative Code, also make clear that there is no minimum amount of work required to trigger the IWPCA's application. See Spaulding v. Abbott Laboratories, 2010 WL 4822894, at *6 (N.D. Ill. Nov. 22, 2010) (quoting Vendetti v. Compass Envt'l, Inc., 2006 WL 3694852, at *1 (N.D.Ill.Dec.14, 2006) (Wage Act applies "where an employee has done at least some work for an Illinois employer while physically present in the state of Illinois")).

Code 300.440(b) ("The Department will assert jurisdiction over a claim when the work was performed in Illinois for an Illinois employer, regardless of where the employee resides.").

Cases in this District have applied Watts to hold that workers are subject to IWPCA coverage even when they live and/or perform a significant part of their work outside of Illinois. See Tsybikov v. Dovgal, No. 19 C 3334, 2022 WL 1238853, at *3 (N.D. Ill. Apr. 27, 2022) (granting class certification to over-the-road drivers) (quoting Watts, 97 N.E.3d at 80) ("The current Illinois Department of Labor regulation and the Illinois Court[s] . . . have held that 'both the plain language of the statute and the recently amended administrative regulations of the Illinois Department of Labor place **no limitation** on the amount of work that an Illinois employee must perform within the state so as avail himself of the Wage Act's protections.'") (emphasis added); see also Yata v. BDJ Trucking Co., 2018 WL 3303290, at *5 (N.D. Ill. July 5, 2018) (collecting cases) ("No court of binding authority has set forth a minimum quantum of work in Illinois to qualify as an employee under the Wage Act.").

In both Watts and Tsybikov, Plaintiffs were over-the-road drivers who performed a number of their trips outside of Illinois. See Watts, 97 N.E.3d at 78 (plaintiffs drove "only 168 miles" or "approximately 8% of the route" within Illinois); Tsybikov, 2022 WL 1238853, at *3 (noting that "the vast majority [of class members] are not Illinois residents and . . . did the majority of their driving outside Illinois"). In Yata, plaintiffs spent part of their time doing line-haul work that took them to other states. See Yata, 2018 WL 3303290, at *5 (estimating that there were periods in which plaintiffs did 20-35% of their work in Illinois). The facts in this case make a much more compelling argument for applying the IWPCA, since it is undisputed that Plaintiffs and class members started and ended **each** workday at one of two warehouses shared by Diakon and Sears in Illinois. See Yata, 2018 WL 3303290, at *5 ("Yata and Zukancic allege that they performed

7

work in Illinois sufficient to survive dismissal . . . they would pick loads up for transport from BDJ's facility in Illinois and return there each day or every other day when performing line-haul work. They further allege that during periods of time when they were driving local, they worked exclusively in Illinois."); see also NPF Racing Stables, LLC v. Aguirre, 18 C 6216, 2020 WL 1322847, at *6 (N.D. Ill. Mar. 20, 2020) ("the work relevant to Aguirre's IWPCA claim, taking the alleged facts in the light most favorable to her, occurred in Illinois, allowing her to invoke the IWPCA.").

### B. The Deductions Taken by Diakon in Reliance on the Independent Contractor Agreements and Promissory Notes were Not Authorized under the IWPCA

Diakon cannot rely on either the Service Agreement or the promissory note signed by drivers as "authorization" made from the delivery drives' pay. As detailed above, the service agreement fails to provide dollar amounts for most categories of deductions (such as damage claims, dopped loads, or truck repairs). The promissory note likewise lists a series of possible deductions to be made from a driver's pay, but does not specify amounts for these deductions. And, critically, while both the Service Agreement and the promissory note contemplate that ongoing deductions will be taken from the delivery drivers' pay, they do not provide a mechanism for the delivery drivers to revoke their consent to the deductions. As a result, the deductions taken by Diakon from Plaintiffs' and class members' pay in reliance on these documents do not meet the requirements of the IWPCA.

Section 9 of the IWPCA contains stringent requirements for deductions. Specifically, this Section prohibits employers from taking deductions from employees' wages unless the deductions are "(1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; [or] (4) made with the express written consent of the employee, given freely at the time the deduction is made[.]" 820 Ill. Comp. Stat. 115/9. The

8

employer bears the burden of proof of establishing of any of the exceptions. 56 Ill. Admin Code § 300.71. As the Appellate Court of Illinois has held, "[a] reading of the Act clearly shows that the purpose of the Act is to assist employees in seeking redress for an employer's wrongful withholding of employee benefits," Kim v. Citigroup, Inc., 368 Ill. App. 3d 298, 306 (Sept. 29, 2006) (citing Miller v. J.M. Jones Co., 198 Ill. App. 3d 151, 152 (1990)), and the "primary objective of the Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits." Id. (quoting Swavely v. Freeway Ford Truck Sales, Inc., 298 Ill. App. 3d 969, 979 (1998)). Any analysis of the IWPCA's deductions provision must be conducted in light of the statute's broad remedial purpose.

Diakon subjected Plaintiffs and other delivery drivers were subject to a host of deductions under the IWPCA, including deductions for damage claims, deductions for "dropped loads" when they did not show up to work on a given day, and deductions for truck rentals and insurance coverage, which amounted to hundreds of dollars each week. As explained below, most of these deductions were not authorized, and were unlawful under the IWPCA.

**1. The Deductions Taken by Diakon were Not for the Delivery Drivers' Benefit**

As a preliminary matter, most of these deductions were clearly not for the benefit of Plaintiffs and class members, as required by the IWPCA. See 820 Ill. Comp. Stat. 115/9; 56 Ill. Admin. Code § 300.280 (deductions made to an employer's, customer or client's property are unlawful per se without written consent given at the time of the deduction); see also Balderrama-Baca, 2019 WL 1057193, at *4 (citing Torres v. Nation One Landscaping, No. 12 CV 9723, 2016 WL 7049048, at *5 (N.D. Ill. Dec. 5, 2016) (rejecting administrative convenience as a benefit under the IWPCA where employer had not "subsidized the cost of the [uniform] rentals or ... received a discounted rate for the group, which it shared with the employees")).

Finally, the deductions for occupational accident insurance are per se illegal given the fact

9

that Diakon is required by Illinois law to provide employees with workers' compensation insurance. 820 Ill. Com. Stat. 305/4. "Illinois has a strong public policy to insure the protection of workers covered by the Workers' Compensation Act." Groark v. Thorleif Larsen & Son, Inc., 231 Ill. App. 3d 61, 65 (1992) (internal citation omitted). Deductions for worker's compensation premiums, thus, cannot be for the employee's benefit. See, e.g., Awuah v. Coverall N. Am., Inc., 952 N.E.2d 890, 899 (Mass. 2011) ("In sum, to permit an employer to transfer to its employees the cost of workers' compensation insurance premiums would be inconsistent with both the general intent and the specific language of the Workers' Compensation Act.").

### 2. The Service Agreement and Promissory Notes Did Not Constitute Express Written Consent at the Time Deductions were Made

Deductions that are not for the employee's benefit can be authorized under the IWPCA only if the employee provides express written consent, freely given, at the time the deduction is made. See 820 Ill. Comp. Stat. 115/9. Diakon will no doubt argue that the Service Agreement and the promissory notes in this case provide authorization for the deductions made from Plaintiffs' and class members' pay. For the reasons explained below, this Court should hold that neither the Service agreement nor the promissory notes provide "authorization" for deductions within the meaning of the IWPCA.

First, the deductions contemplated by the service agreement and the promissory notes were not authorized in writing at the time they were made. Plaintiffs and class members signed the Service Agreement, typically together with a promissory note, at the time they were hired by Diakon. See Dkts. 45.1, 45.2 (Service Agreement and promissory note signed on the same day). As a result, neither of these documents provided for contemporaneous authorization of deductions. In other words, although Diakon made deductions from the delivery drivers' pay on a weekly basis,

the Service Agreement and the promissory note constituted only a one-time authorization.[5] See Balderrama-Baca, 2019 WL 1057193, at *6 (citing 820 Ill. Comp. Stat. 115/9(4); 56 Ill. Admin. Code § 300.840) (finding that one-time "authorization" forms signed by workers for uniform deductions did not meet the requirements of the IWPCA) ("Under both the IWPCA and § 300.840, therefore, [the employer] could deduct the cost of its required uniforms only with the 'express written consent of the employee, given freely at the time the deduction is made.'"); Torres, 2016 WL 7049048, at *5 (although defendants argued that the "employees' signature on the handbook provided express written consent for [deductions made from the employees' compensation for uniforms]," the court found that "Since defendants admit their failure to obtain express consent from each employee each time a deduction was made, the uniform deductions were unlawful . . ."); Calderon v. Witvoet, 764 F. Supp. 536, 541-42 (C.D. Ill. 1991) (finding that an employer's failure to obtain written consent at the time the deduction was made would violate the IWPCA).

Any argument that Diakon may advance that a one-time authorization made by signing the Service Agreement and/or the promissory note is sufficient would run counter to the remedial purposes of the IWPCA. As one court explained, "[t]he interpretation urged by the defendant that a one time consent to deductions is sufficient even if some deductions are taken months or even years later runs contrary to the plain language of [820 Ill. Comp. Stat § 115/9]. To interpret the language in this manner would render the phrase . . . 'at the time the deduction was made,' . . . mere surplusage." Alcalan v. Landscape Concepts Management, Inc., No. 07-CH-3056, Hearing Transcript at 23:21-24:16 (Ill. Cir. Ct. Aug. 23, 2011) (attached hereto as Exhibit 1). "Clearly, the

---

[5] While there is evidence that Diakon sought to obtain delivery drivers' signatures for some (but not all) damage claims, there is no evidence that it obtained written authorization for any of the other categories of deductions taken from the delivery drivers' pay on a week-to-week basis.

11

legislature could have chosen to say that a deduction is allowable as long as consent is freely given, but they did not choose to end the sentence there. Defendant's interpretation would;d simply read this language out of the statute, which the Court is not at liberty to do." Id. The broad remedial goal of the IWPCA "to assist employees in seeking redress for an employer's wrongful withholding of employee benefits," demands that the language of 820 Ill. Comp. Stat. 115/9 be enforced to its fullest extent, meaning that the Court cannot simply read out of existence the statute's requirement that the authorization be given **at the time** each deduction is made. Kim, 368 Ill. App. 3d at 306.

Although Diakon may point out that a number of the deductions taken from the delivery drivers' pay were recurring from week to week, these deductions were still not properly authorized under the Service Agreement or the promissory note. Likewise, any argument that ongoing deductions for a customer damage claim were authorized by drivers signing a supplemental promissory note, lacks merit. To that end, 56 Ill. Adm. Code 300.720(b) provides that "[w]hen a deduction is to continue over a period of time and the written agreement provides for that period of time, provides for the same deduction each period and **allows for voluntary withdrawal for the deduction**, the agreement shall be considered to be given freely at the time the deduction is made." In rejecting the employer's claim that a failure to notify employees of their right to voluntarily withdraw consent was merely a technical violation of the IWPCA, the court in Balderrama-Baca, 2019 WL 1057193, at *6, specifically found that an agreement purporting to authorize ongoing deductions over a period of time was unenforceable and did not comport with the requirement of 56 Ill. Admin. Code § 300.720(b), unless it notified employees of their right to voluntarily withdraw their consent.

Here, neither the Service Agreement nor any of the promissory notes provide a mechanism

for the drivers to revoke their consent to the deductions. See Dkts. 45.1, 45.2; Ex. 1 to Plaintiffs' SoF. As a result, even the deductions that were supposedly authorized in regularly recurring amounts are unlawful, because the Service agreement and the promissory notes did not permit the drivers to voluntarily withdraw their authorization for the deductions.

Moreover, the delivery drivers did not provide "express written consent" for most of the categories of deductions (with insurance being the only possible exception), because the Service Agreement and the promissory note did not provide for any specific amounts that would be deducted for each period, or provide that the amount would remain the same for each period. As a result, most of the deductions are impermissible under 56 Ill. Adm. Code 300.720(b). Indeed, as this Court has previously found, where the agreement does not provide for the same amount of deduction for each pay period, the agreement is not sufficient to satisfy the IWPCA and 56 Ill. Admin Code tit. § 300.720. Johnson v. Diakon Logistics, 2018 WL 1519157, at *8 (N.D. Ill. Mar. 28, 2018) ("The Illinois Administrative Code, which is part of a set of regulations implementing the IWPCA, supports the distinction between the deduction of known amounts and the deduction of unknown amounts . . . The regulations support the idea that a proper consent entails the employee having some idea what the actual deductions would be."). Here, for most of the deductions, including "loss and damages" and the purchase or rental of "products, equipment or services" from Diakon, the Service Agreement and promissory note did not provide specific amounts that would be deducted for each period or provide that the amount would remain the same for each period.

## V. CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to Plaintiffs and find that the IWPCA applies to all work performed by Plaintiffs and class members in this case, and

that the deductions Diakon took from Plaintiffs' and class members' pay were unlawful.

Dated: November 14, 2022                                      Respectfully Submitted,

                                                   **TIMOTHY JOHNSON and DARRYL MOORE**,

                                                   individually and on behalf of all others similarly situated,

                                                   *Plaintiffs*,

                                                   __/s/Olena Savytska____

                                                   Harold L. Lichten (*pro hac vice*)
                                                   Olena Savytska (*pro hac vice*)
                                                   Lichten & Liss-Riordan, P.C.
                                                   729 Boylston Street, Ste. 2000
                                                   Boston, MA 02116
                                                   Tel. (617) 994-5800
                                                   Fax (617) 994-5801
                                                   hlichten@llrlaw.com
                                                   osavytska@llrlaw.com

                                                   Bradley Manewith
                                                   Marc Siegel
                                                   Siegel & Dolan, Ltd.
                                                   150 N. Wacker Dr., Ste. 3000
                                                   Chicago, IL 60601
                                                   Tel. (312) 878-3210
                                                   Fax (312) 878-3211
                                                   bmanewith@msiegellaw.com
                                                   msiegel@msiegellaw.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 14, 2022, a copy of this document was served by electronic filing on all counsel of record.

                                                  /s/Olena Savytska
                                                  Olena Savytska