# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TIMOTHY JOHNSON and DARRYL MOORE, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br> v.<br><br>DIAKON LOGISTICS, WILLIAM C. JARNAGIN, JR., INNOVEL SOLUTIONS, INC. f/k/a SEARS LOGISTICS SERVICES, INC. and SEARS ROEBUCK AND CO.<br><br>   Defendants. | Case No. 1:16-cv-06776<br><br>Judge Andrea R. Wood<br><br>Magistrate Judge M. David Weisman |

## DEFENDANT DIAKON LOGISTICS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. BACKGROUND .................................................................................................................... 1

    A. Factual Background ...................................................................................................... 1

        1. Diakon Logistics ................................................................................................. 1

        2. Plaintiffs ............................................................................................................. 2

            a. Darryl Moore ............................................................................... 2

            b. Timothy Johnson ......................................................................... 3

        3. Deductions ......................................................................................................... 3

    B. Procedural History ....................................................................................................... 4

III. SUMMARY JUDGMENT STANDARD .............................................................................. 5

IV. ARGUMENT ......................................................................................................................... 6

    A. Diakon Made No Deductions From "Wages" Under The Service Agreements ..... 6

    B. Johnson And Moore's Individual Claims Under The IWPCA Fail Because They Authorized Each Deduction Or Each Deduction Was Otherwise For Their Benefit ........................................................................................................................... 7

        1. All deductions for truck rentals were to Johnson and Moore's benefit, properly authorized, or both ............................................................................ 10

        2. All deductions for insurance coverage were to Johnson and Moore's benefit, properly authorized, or both ............................................................. 11

    C. Johnson And Moore Properly Authorized All Deductions For Problem Deliveries And Customer Damage Claims ................................................................ 12

    D. Johnson Cannot Succeed On His Individual Claims Under The IWPCA For The Period He Lived In And Worked Out Of Wayland, Michigan ............................. 12

V. CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

PAGE(S)

## Cases

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   835 N.E.2d 801 (Ill. 2005) .................................................................................................... 12

*Bell v. Bimbo Bakeries Distrib., Inc.*,
   No. 11 C 03343, 2013 WL 6253450 (N.D. Ill. Dec. 3, 2013) ......................................... 7, 8, 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................................... 5

*Chen v. Quark Biotech, Inc.*,
   No. 03 C 5729, 2004 WL 1368797 (N.D. Ill. June 17, 2004) ................................................ 13

*Enger v. Chicago Carriage Cab Corp.*,
   812 F.3d 565 (7th Cir. 2016) ............................................................................................ 6, 7, 8

*Ferezy v. Wells Fargo Bank, N.A.*,
   755 F. Supp. 2d 1010 (S.D. Iowa 2010) .................................................................................. 8

*Glass v. Kemper Corp.*,
   133 F.3d 999 (7th Cir. 1998) ................................................................................................. 12

*Guy v. Ford Storage & Moving Co.*,
   No. 4:18-CV-216-JAJ-RAW, 2021 WL 1351445 (S.D. Iowa Mar. 1, 2021) ............................ 8

*Johnson v. Diakon Logistics, Inc.*,
   44 F.4th 1048 (7th Cir. 2022) ....................................................................................... 4, 5, 13

*Kim v. Citigroup, Inc.*,
   368 Ill. App. 3d 298 (Ill. Ct. App. 2006) ................................................................................ 7

*Landers-Scelfo v. Corp. Office Sys., Inc.*,
   356 Ill. App. 3d 1060 (2005) .................................................................................................. 6

*McGinn v. Burlington N. R.R. Co.*,
   102 F.3d 295 (7th Cir. 1996) .................................................................................................. 5

*Osorio v. Tile Shop, LLC*,
   No. 15 C 15, 2016 WL 316941 (N.D. Ill. Jan. 27, 2016) ............................................... 7, 8, 11

*Prate Roofing & Installations, LLC v. Liberty Mut. Ins. Corp.*,
   2022 IL 127140 ...................................................................................................................... 8

*Seo v. H Mart, Inc.*,
  No. 19-cv-03248, 2021 WL 5493238 (N.D. Ill. Nov. 23, 2021) ............................................... 13

*Spatesv. Roadrunner Transp. Sys., Inc.*,
  No. 15 C 8723, 2016 WL 7426134 (N.D. Ill. Dec. 23, 2016) ...................................................... 8

*Wharton v. Comcast Corp.*,
  912 F. Supp. 2d 655 (N.D. Ill. 2012) ........................................................................................... 6

**Statutes**

625 ILCS 5/18c-1101 .......................................................................................................................... 9

625 ILCS 5/18c-1102(a) ..................................................................................................................... 9

625 ILCS 5/18c-4103(a)(3) ................................................................................................................. 9

820 ILCS 115 ..................................................................................................................... 1, 6, 7, 8, 12

Iowa Code § 91A.5(1)(b) .................................................................................................................... 8

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................................... 5

Fed. R. Civ. P. 56(e) ........................................................................................................................... 5

**Regulations**

49 C.F.R. Part 376 ............................................................................................................................ 10

92 Ill. Admin. Code § 1360.40(a)(4) .................................................................................................. 9

Defendant Diakon Logistics respectfully submits this Memorandum in Support of its Motion for Summary Judgment on Plaintiffs Timothy Johnson and Darryl Moore's claims under the Illinois Wage Payment and Collection Act.

## I. INTRODUCTION

Diakon signed Service Agreements with Plaintiff Timothy Johnson, Johnson's business EZ Techniques, Inc., and Plaintiff Darryl Moore to deliver (and sometimes install) goods to homes throughout the Midwest. The Service Agreements authorized Diakon to deduct certain sums from their settlement statements—including for truck rental expenses, insurance coverage, problematic deliveries, and damages to customers' goods. Plaintiffs now assert that all of the deductions Diakon made violated the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115 *et seq.* But none of these deductions were for "wages." And each deduction falls under a statutory exception. First, many deductions were made for Plaintiffs' own benefit or convenience. Second, the deductions were properly authorized under either Plaintiffs' Service Agreements or standalone promissory notes. Diakon is therefore entitled to summary judgment on Plaintiffs' IWPCA claims.

Diakon is also entitled to summary judgment on Johnson's individual IWPCA claim for the time he worked out of state—in particular, the six-month period he lived and worked in western Michigan. Johnson's work performed out of state falls outside the statute's reach.

## II. BACKGROUND

### A. Factual Background

#### 1. Diakon Logistics

Diakon is a third-party logistics provider based in Virginia. It provides supply-chain management services to help businesses reduce transportation costs, increase efficiency in product movement, and allow the customer to focus on its core business. One of its customers is Innovel Solutions, Inc. *See Defendants' Statement of Material Facts as to Which There is No Genuine Dispute* (SOF) ¶¶ 1-3. Innovel, in turn, contracts with retailers like Sears to consolidate and arrange the retailers' products and orders for delivery (and installation). *Id.* ¶ 4. In other words, Innovel looks at the totality of the retailer's orders and determines the most efficient way to group those

1

orders for delivery to the retailer's customers. *Id.* Based on routes that Innovel organizes, Diakon offers the consolidated products to individual contractors and transportation companies—under Service Agreements—that have the trucks and labor to physically deliver (and install) the retailers' goods. *Id.* ¶ 4.

In Illinois, the retailers' goods are stored in Innovel's Romeoville and Granite City warehouses. *Id.* ¶ 5. Transportation companies then deliver these products into multiple states including Missouri and Indiana. *Id.* ¶ 6. Innovel's Granite City warehouse sits on the Illinois-Missouri border. *Id.* ¶ 7. As a result, up to eighty percent of products loaded from this location are delivered in Missouri. *Id.* Goods loaded out of Innovel's Romeoville warehouse, meanwhile, are routinely delivered in Indiana. *Id.* ¶ 8.

   2.  **Plaintiffs**

     a.  **Darryl Moore**

When Plaintiff Darryl Moore started performing third-party delivery services, he did so as an employee of MJCAT Trucking, Inc. *Id.* ¶ 9. MJCAT Trucking was a transportation company owned by Maurice Blanton that contracted with Diakon to perform delivery services out of Innovel's Romeoville warehouse. *Id.* ¶ 10. Moore later decided that he "[w]anted to work for [him]self," and, on June 24, 2014, he signed his own Service Agreement with Diakon. *Id.* ¶ 11 (quoting *Moore Tr.* at 22:18-22). It wasn't until August 2014, however, that Moore began performing services for Diakon out of Innovel's Romeoville warehouse. *Id.* ¶ 12. A month later, he transferred to another location in the Chicago area. *Id.* Moore then "had the dream of getting ten trucks," *id.* ¶ 13 (quoting *Moore Tr.* at 22:18-22), and went on to hire two employees and run two trucks, *id.* ¶ 13. During his tenure with Diakon, Moore spent time performing delivery services inside and outside of Illinois—including various locations in Indiana. *Id.* ¶ 14. But after only 10 months, effective April 24, 2015, Moore terminated the Service Agreement to pursue other opportunities. *Id.* ¶ 15.

### b. Timothy Johnson

Unlike Moore, Plaintiff Timothy Johnson came to Diakon with "a lot of experience" performing third-party delivery services. *Id.* ¶ 16 (quoting *Johnson Tr.* at 40:20-25). Johnson first contracted with Diakon on November 29, 2011 to deliver product from Innovel's Romeoville warehouse. *Id.* ¶ 17. Six months later, Johnson channeled his experience into forming and operating his own transportation company called EZ Techniques, Inc., which Johnson formed prior to contracting with Diakon. *Id.* ¶ 18. And that company, on June 29, 2012, similarly contracted with Diakon to deliver product from Innovel's Romeoville warehouse. *Id.* ¶ 19. Johnson and EZ Techniques respective services were terminated as of September 2014. *Id.* ¶ 20.

Johnson and EZ Techniques spent a substantial amount of time making deliveries to (and from) locations that were not in Illinois. *Id.* ¶ 21. Although for a period EZ Techniques loaded products in Romeoville, it would often get "Indiana routes" that had "between 15 and 20 stops" in Indiana in a single day. *Id.* (quoting *Johnson Tr.* at 105:1-17, 105:22-106:3). And for around six months, Johnson also lived in, and EZ Techniques provided delivery services out of, Wayland, Michigan. *Id.*

### 3. Deductions

Diakon made certain deductions from the settlement statements issued to transportation companies such as EZ Techniques and sole-proprietors like Moore. *Id.* ¶ 22. These deductions largely stemmed from authorizations set out either in Service Agreements or specific promissory notes.

For example, as is common in the industry, Diakon facilitates insurance and truck rental programs through third-parties that allow transportation companies to obtain competitive prices through economies of scale based on the number of participants in those programs. *Id.* ¶ 23. The transportation companies (or individuals) that elect to participate in these programs authorize Diakon to deduct, on a weekly basis, the expenses associated with participating in those programs. *Id.* ¶ 24. And in certain instances, Diakon also advances transportation companies amounts so that they can cover larger expenses that they incur or to address cash flow issues. *Id.* ¶ 25. Diakon will

then similarly deduct the agreed upon amount from the transportation company's weekly settlement check until the advance is repaid. *Id.*

Each week, Diakon issued a settlement check to the transportation companies (and individuals) it contracts directly with. *Id.* ¶ 26. Prior to issuing a check, Diakon provided the principal of the transportation company (or individual contractor) a draft of the settlement statement. *Id.* ¶ 27. This draft statement breaks down the transportation company's gross revenue for the week (based on the services provided by all their trucks) and each specific deduction scheduled to be taken from that gross revenue. *Id.* This process permitted the principals of the transportation companies to review the drafts and make any challenge to the calculation of the gross revenue or any deduction they think is inappropriate or unauthorized—just as their Service Agreements set out. *Id.* ¶ 28.

Johnson (including through EZ Techniques) and Moore also signed promissory notes authorizing Diakon to make recurring weekly deductions to repay advances they requested. *Id.* ¶ 29. The terms of the promissory notes vary according to the agreements between the parties, but they all share similar characteristics. *Id.* ¶ 30. Each note, for example, expressly authorized Diakon to make a recurring weekly deduction of a specific amount from the transportation company's weekly settlement. *Id.* ¶ 31. Each was signed and dated. *Id.* ¶ 32. And these authorizations were freely given; for example, Moore testified he did not feel forced to sign any agreements and admitted he freely signed the written agreements. *Id.* ¶ 33; *see also id.* (*Johnson Tr.* at 219:10-221:8 ("Q. You freely signed this? A. Correct.")).

### B. Procedural History

Following class certification (ECF No. 185), Diakon moved for summary judgment because the Service Agreements at issue contained Virginia choice of law provisions. ECF No. 211. The district court granted Diakon's motion and concluded that the Virginia choice of law provisions were enforceable as a matter of law and that those provisions extinguished the class's claims under the IWPCA. ECF No. 244. But the Seventh Circuit reversed the Court's summary judgment order. *See Johnson v. Diakon Logistics, Inc.*, 44 F.4th 1048 (7th Cir. 2022), *reh'g denied*,

4

No. 21-2886, 2022 WL 4290757 (7th Cir. Sept. 16, 2022) (holding the Service Agreement's designation of Plaintiffs as independent contractors did not control given the definition of "employee" under the IWPCA). Though notably, the Seventh Circuit observed "that plaintiffs' claims to undiminished wages *arise from their work in Illinois*, not from their contracts" and that the IWPCA "governs payment *for work in Illinois* regardless of what state's law governs other aspects of the parties' relations." *Id.* at 1052 (emphasis added); *see also id.* at 1053 (holding "[t]he contractual clauses on which Diakon relies do not apply to claims brought under the Act *based on work done in Illinois*" and "remand[ing] for further proceedings" (emphasis added)).

At a February 27, 2020 status conference, prior to moving for summary judgment on the choice of law issue, Diakon raised filing a subsequent summary judgment motion with the Court. *See* ECF No. 193. During that conference, the Court agreed that Diakon would not be precluded from filing a subsequent summary judgment motion on the merits if it solely moved on the choice of law question. *Id.* And following the Court's guidance, Defendants did not move on this issue in its original summary judgment motion because Defendants argued, and the Court agreed, that Virginia law applied. Thus, following remand, the Court ordered new briefs to be filed by November 14, 2022. *See* ECF No. 263 ("Any new motions for summary judgment shall be filed by 11/14/2022.").

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment carries its initial burden by either identifying the evidence that demonstrates the absence of a genuine issue of material fact, or by pointing out lack of evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In response, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington N. R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted).

## IV. ARGUMENT

In their Third Amended Complaint, Plaintiffs Johnson and Moore allege Diakon violated the IWPCA by "deduct[ing] certain expenses" from their settlement statements "including deductions for insurance, any related insurance claims, truck rentals, and uniforms," ECF No. ¶ 23, along with "the costs" incurred for deliveries that were "unsatisfactory (e.g., damaged goods, damage to customer property)," *id.* ¶ 25. For reasons explained below, however, their individual claims fail as a matter of law because Diakon never made deductions from "wages" and all alleged deductions fall under an exception to the IWPCA. And in any case, a significant portion of Johnson's individual claims fall outside of the IWPCA's geographic scope.

### A. Diakon Made No Deductions From "Wages" Under The Service Agreements

The IWPCA does not govern the terms under which deductions may be made from every contract. Rather, the statute applies only to "deductions by employers from wages." 820 ILCS 115/9. The IWPCA defines wages as "any compensation *owed* an employee by an employer *pursuant to an employment contract or agreement between the 2 parties*." 820 ILCS 115/2 (emphases added). "[F]or a person to state a claim under the [IWPCA], he or she must plead that wages or final compensation is due to him or her . . . under an employment contract or agreement." *Landers-Scelfo v. Corp. Office Sys., Inc.*, 356 Ill. App. 3d 1060, 1067 (2005). "The IWPCA therefore does not provide an independent right to payment of wages and benefits; *instead, it only enforces the terms of an existing contract or agreement*." *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 657-58 (N.D. Ill. 2012) (emphasis added).

Plaintiffs cannot use the IWPCA "to rewrite the terms of [their] agreement[s]." *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 570 (7th Cir. 2016). "[T]he IWPCA provides no substantive relief beyond what the underlying [] contract requires." *Id.*; *Wharton*, 912 F. Supp. 2d at 657-58. That contract here is the Service Agreement, and Plaintiffs do not suggest otherwise. *See* ECF No. 244 at 13 ("In this case, Plaintiffs rely solely upon the Service Agreements to support their IWPCA claims."). And under the Service Agreement terms, Plaintiffs (or the transportation company signatory) bear responsibility for the complained-of deductions. SOF ¶ 34. As a result,

these deduction amounts cannot flow into any calculation of Plaintiffs' alleged "wages" that Defendants paid or owed to Plaintiffs under the IWPCA or the Service Agreements.

In other words, the Service Agreements require that any "wages" are calculated net of any deductions. There is no dispute that Diakon compensated the other party to the Service Agreement—whether the individual Plaintiff or his business entity—in accordance with the terms of the Service Agreements. Because the Service Agreements only calculate alleged "wages" after accounting for or assigning responsibility for any chargeback amounts, Diakon did not deduct any amounts from Plaintiffs' "wages," and no violation of the IWPCA therefore occurred.

  **B. Johnson And Moore's Individual Claims Under The IWPCA Fail Because They Authorized Each Deduction Or Each Deduction Was Otherwise For Their Benefit**

If the Court were to ignore the Service Agreement text and conclude "wages" were paid to either Plaintiff or his business entity, summary judgment would nonetheless still be required in Diakon's favor given each of Plaintiffs' deductions fall under one of two relevant exceptions to the IWPCA.[1]

First, the IWPCA permits deductions that are "to the benefit of the employee." 820 ILCS 115/9; *Osorio v. Tile Shop, LLC*, No. 15 C 15, 2016 WL 316941, at *1 (N.D. Ill. Jan. 27, 2016). Courts have found, for example, that a deduction is "for the benefit of the employee" if the deduction creates a convenience for the employee. *See, e.g.*, *Bell v. Bimbo Foods Bakeries Distrib., Inc.*, No. 11 C 03343, 2013 WL 6253450, at *4 (N.D. Ill. Dec. 3, 2013) ("It is not the *expense* that must be for his benefit, but the *deduction* itself."). Deductions absolving the employee from "having to pay [] out-of-pocket for [] expenses" or otherwise improves their financial standing also satisfy the statute's exception. *Id.*; *Kim v. Citigroup, Inc.*, 368 Ill. App. 3d 298, 309 (Ill. Ct. App. 2006) (reversing summary judgment on class's Illinois Wage Act claim and observing "the

---

[1] Diakon also disputes Plaintiffs are employees entitled to recover under the IWPCA. Regardless, the Court need not address this threshold question before ruling on this Motion. *See Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565 (7th Cir. 2016) (affirming summary judgment to defendant without deciding the classification issue); *Bell v. Bimbo Bakeries Distrib., Inc.*, No. 11 C 03343, 2013 WL 6253450 (N.D. Ill. Dec. 3, 2013) (granting summary judgment to defendant without deciding the threshold employment classification issue).

7

record indicates that plaintiff chose to participate in the CAP because he felt it was a smart investment vehicle"). And a deduction can be for an employee's benefit even if they do not perceive it as such. *See, e.g.*, *Spates v. Roadrunner Transp. Sys., Inc.*, No. 15 C 8723, 2016 WL 7426134, at *4 (N.D. Ill. Dec. 23, 2016) ("Nor does it matter whether Spates or Lewis believed the deductions were for their benefit.").[2]

Second, given the IWPCA's statutory purpose "to hold the employer to his promise under the employment agreement," *Enger*, 812 F.3d at 570, deductions are also permitted if "made with the express written consent of the employee, given freely at the time the deduction is made." 820 ILCS 115/9. As this Court observed, the key issue is whether "the employee [has] some idea what the actual deductions would be." ECF No. 98 at 17. Therefore, even a one-time written agreement authorizing deductions from pay is enough to meet the IWPCA's written consent requirement. *See, e.g.*, *Osorio*, 2016 WL 316941, at *2 (express written consent does not "mean that where an employee signs an agreement to permit regular deductions on a biweekly basis where necessary to reimburse his employer for subsidies, he still must authorize every deduction from every paycheck on a paycheck-by-paycheck basis"); *Bell*, 2013 WL 6253450, at *5 (N.D. Ill. Dec. 3, 2013) (rejecting employee's argument that employer violated the IWPCA by "deduct[ing] varying amounts and modif[ying] or renam[ing] the subcategories for the deductions without seeking new authorization").

---

[2] No court has parsed out the ordinary meaning of this exception. But several courts have addressed this question when interpreting a similar Iowa statute (Iowa Code § 91A.5(1)(b)) that also excepts deductions that accrue "to the benefit of the employee" (with the added caveat that they are authorized). Looking to the exception's text, these courts have construed "to the benefit of the employee" to mean a deduction is permissible "as long as there is a possible benefit" to the employee. *Guy v. Ford Storage & Moving Co.*, No. 4:18-CV-216-JAJ-RAW, 2021 WL 1351445, at *6 (S.D. Iowa Mar. 1, 2021). "[W]hat an employee considers the benefit is irrelevant." *Id.* And a "benefit" is not "restricted to tangible, financial matters." *Ferezy v. Wells Fargo Bank, N.A.*, 755 F. Supp. 2d 1010, 1015-16 (S.D. Iowa 2010) ("[T]he ordinary meaning of benefit as evidenced by its dictionary definition is not restricted to tangible, financial matters. Of course, a benefit may be a payment or gift, but a benefit may also be 'something that guards, aids, or promotes well-being.'"). Although these cases did not interpret the IWPCA, they are persuasive authority because an Illinois court would likewise start with the ordinary meaning of the IWPCA's text. *See Prate Roofing & Installations, LLC v. Liberty Mut. Ins. Corp.*, 2022 IL 127140, ¶ 23 ("The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the statutory language, given its plain and ordinary meaning.").

Other Illinois statutes and regulations likewise contemplate a single written agreement between a motor carrier and owner-operator can satisfy the IWPCA's written consent requirement. Illinois passed the Illinois Commercial Transportation Law, 625 ILCS 5/18c-1101 *et seq.*, to "facilitate a coordinated approach to regulation of motor carriers, rail carriers, and brokers" in Illinois, 625 ILCS 5/18c-1102(a). That "coordinated approach" mandates that a company with motor carrier authority (like Diakon) contracting for delivery services with an owner-operator such as class member Kleuskens must enter a written agreement "constitut[ing] *the complete and exclusive statement of terms* between the parties." 625 ILCS 5/18c-4103(a)(3) (emphasis added); SOF ¶ 35 (citing *Kleuskens Tr.* at 20:10-14, where Kleuskens acknowledged that while transporting product under contract with Diakon, he operated under Diakon's motor carrier authority). And they must cover specific terms as set out by the Illinois Commerce Commission. 625 ILCS 5/18c-4103(a)(3). Among these terms, the Commission requires the lease agreement to specifically identify the party responsible "for payment of expenses incurred in providing transportation service, either directly or through deductions (chargebacks)." 92 Ill. Admin. Code § 1360.40(a)(4). And that includes for "(A) fuel costs; (B) fuel and other taxes; (C) empty mileage; (D) licenses, permits, plates, and decals; (E) tolls and other fees; (F) insurance and surety coverage; (G) rentals or other payments to the carrier; and (H) any other expenses related to the transportation." *Id.*

Moreover, as elaborated below, a variety of the settlement statement deductions were for the "benefit" (within the meaning of the IWPCA) of the individual or transportation company signing the contract. SOF ¶ 36. Those benefits included the convenience of Diakon facilitating payments and the evident savings versus making upfront purchases on the open market. *Id.* Indeed, Johnson recognized that Diakon's offerings generally "helped [his business] make money"—including by affording opportunities to run multiple trucks and hire several employees during his tenure with Diakon. *Id.* ¶ 37 (quoting *Johnson Tr.* at 242:12-14). Though even if certain deductions might not have been for Plaintiffs' benefit, all relevant deductions were properly authorized through their Service Agreements and individual promissory notes. *Id.* ¶ 38. They were freely

9

authorized, *id.* ¶¶ 38–39, and the delivery drivers' agreements allowed them to withdraw their consent to any recurring deductions, *id.* ¶ 40. Accordingly, Plaintiffs' authorizations, even standing alone, are enough to preclude recovering individually under the IWPCA.

        **1.**        **All deductions for truck rentals were to Johnson and Moore's benefit, properly authorized, or both.**

Under the parties' agreement, Johnson and Moore agreed to furnish their own transportation equipment (*i.e.*, trucks) as well as drivers to perform the transportation services.[3] SOF ¶ 41. Given the significant upfront cost of leasing or owning a truck, at the option of any given contractor, Diakon could facilitate weekly truck rentals from a third-party on that contractor's behalf and in turn deduct the weekly truck rental payments from the contractor's settlement statements and forward it to the truck rental company. *Id.* ¶ 42. Not only was this a significant practical convenience for the contractors—reducing the need for startup capital along with the hassle of securing a truck rental and making timely payments—it also reduced the ultimate expense to contractors versus leasing trucks directly (on the open market). *Id.*

Johnson and Moore recognized these benefits and capitalized on them. *Id.* ¶ 43. As Johnson testified, it was more efficient to rent his company's truck through the process Diakon facilitated than to purchase one. *Id.* In fact, on several occasions, Johnson's company ran two trucks—both of which he opted to have his company rent from third-parties and make weekly payments facilitated by Diakon via deductions. *Id.* Moore chose to do the same for his truck because that option was the cheapest rate he could find. *Id.* He also acknowledged the ease of deductions over paying for the rental directly. *Id.* In short, the deductions were "to the benefit of" Johnson's company and Moore and are thus excepted from the IWPCA. *See Bell*, 2013 WL 6253450, at *4.

---

[3] This is common practice in the trucking industry; so much so that the federal government regulates the disclosures that must be made in contracts, like the Service Agreements, that memorialize the terms on which independent contractors provide their equipment to motor carriers like Diakon. *See* 49 C.F.R. Part 376 (Federal Leasing Regulations, which apply to motor carriers' leases of commercial motor carrier equipment and related professional truck driving services from independent contractors).

Both Johnson, including on behalf of his company, and Moore properly authorized deductions related to leasing their trucks. First, both signed Service Agreements that required contractors "at [their] own expense" to "provide its own vehicle or vehicles . . . as is necessary to fulfill its obligations." SOF ¶ 44 (quoting Plaintiffs' Service Agreements § 4 (Exs. 8-9)). And both understood that, by signing a Service Agreement, they were agreeing (individually or on behalf of a business entity) to the contract's terms. *Id.* ¶ 45. Second, both signed documents titled "Authorization to Deduct from Settlement" where they agreed to deductions for "Truck Lease[s]" during the term of their Settlement Agreements if the charges are paid on their behalf by Diakon. *See id.* ¶ 46 (quoting Plaintiffs' Authorizations (Exs. 8-9)). And third, they executed promissory notes for each of their truck rentals. *Id.* ¶ 47. These notes specified the amount, term, and period for payments and were signed and dated by Plaintiffs. *Id.* Accordingly, Diakon "cannot now be held liable for making deductions that [Plaintiffs] expressly authorized." *Osorio*, 2016 WL 316941, at *2.

### 2. All deductions for insurance coverage were to Johnson and Moore's benefit, properly authorized, or both.

Under the Service Agreement, Plaintiffs agreed to obtain liability and workers' compensation (*i.e.*, disability) insurance, which would cover both injuries they suffered as well as injuries suffered by any employees Plaintiffs' businesses chose to hire. SOF ¶ 48. Similar to the truck rentals described above, Diakon affords contractors the option of facilitating their insurance coverage through a third-party insurer and making weekly insurance premium payments to that insurer via weekly deductions. *Id.* ¶ 49.

Also like with the truck rentals, contractors who choose to participate secure more competitive prices for insurance and reduce their administrative burden compared to purchasing insurance on the open market. *Id.* ¶ 50. Both Johnson and Moore agreed. Johnson, for example, noted the benefit of acquiring a cheaper policy. *Id.* ¶ 51. Moore, likewise, stated that the insurance offerings facilitated by Diakon proved cheaper than other options he had looked at, and that making his premium payments through deductions was more convenient. *Id.*

11

### C. Johnson And Moore Properly Authorized All Deductions For Problem Deliveries And Customer Damage Claims

Finally, Johnson and Moore properly authorized deductions for "dropped loads," instances where contractors delay resulted in business losses for Diakon, as well as for damages to customers' products and related issues with deliveries. Here, again, the Service Agreements authorize settlement statement deductions for "loss and damages." *Id.* ¶ 52 (quoting Plaintiffs' Service Agreements, Exhibit A § 2(a) (Exs. 8-9)). Diakon prioritized getting a contractor's consent and authorization for any deduction—including via promissory notes. *Id.* ¶ 53. Additionally, Johnson and Moore were able to both review and contest any amounts related to deductions before a deduction occurred and had the ability to address damages claims personally rather than have Diakon pay for the claim and settlement deduct the amounts. *Id.* ¶ 54.

Despite suggesting all of these deductions were improper, Johnson conceded that at least some damage claims were his responsibility. *Id.* ¶ 55. Moore also recalls only three or four instances of deductions like this—one of which he accepts was proper. *Id.* ¶ 56. And Moore noted there was a process that identified the damage and allowed him to challenge the allegation. *Id.* ¶ 57 (citing *Moore Tr.* at 89:7-17, where Moore explained that "Diakon came to [him] and said, well, this customer is saying you did this, and then I get -- challenge it and see what's going on; they would give me the time to do that"). He also admits he freely signed and executed promissory notes to account for any damages he caused. *Id.* ¶ 58.

### D. Johnson Cannot Succeed On His Individual Claims Under The IWPCA For The Period He Lived In And Worked Out Of Wayland, Michigan

Diakon is entitled to summary judgment on Johnson's IWPCA claim for the uninterrupted period when he lived and worked outside of Illinois. In Illinois, the general rule is that Illinois will not apply its statutes to regulate conduct beyond its borders. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005). The IWPCA only applies to "employers and employees *in this State.*" 820 ILCS 115/1 (emphasis added). The Seventh Circuit observed that the IWPCA's text supports the interpretation "that Illinois' law does not protect even its own residents when they are working in another state." *Glass v. Kemper Corp.*, 133 F.3d 999, 1000-01 (7th Cir. 1998)

12

(refusing to apply the statute to a non-Illinois resident who performed all of his work outside of Illinois).

Even more, the Seventh Circuit's decision in this very case reflects the Court's understanding that the IWPCA only applies to *work performed in Illinois*. *See Johnson v. Diakon Logistics, Inc.*, 44 F.4th 1048, 1052 (7th Cir. 2022), *reh'g denied*, No. 21-2886, 2022 WL 4290757 (7th Cir. Sept. 16, 2022) ("[P]laintiffs' claims to undiminished wages *arise from their work in Illinois*, not from their contracts." (emphasis added)); *id.* ("The Act governs payment *for work in Illinois* regardless of what state's law governs other aspects of the parties' relations." (emphasis added)); *id.* at 1053 (holding "[t]he contractual clauses on which Diakon relies do not apply to claims brought under the Act *based on work done in Illinois*" and "remand[ing] for further proceedings" (emphasis added)).

*Glass* and its progeny demonstrate that an employee (even if an Illinois resident) cannot recover under the IWPCA if the relevant work at issue was performed outside of Illinois.[4] In this case, Johnson spent his final six months contracting with Diakon residing in and working out of western Michigan. SOF ¶¶ 21, 59. There is no evidence Johnson performed work within Illinois at all during this period. Diakon is therefore entitled to summary judgment on Johnson's individual IWPCA claim for the period he lived and worked in Michigan.

## V.     CONCLUSION

For these reasons, Defendant Diakon Logistics respectfully request the Court grant judgment in its favor on Plaintiffs' individual IWPCA claims.

---

[4] *See also Seo v. H Mart, Inc.*, No. 19-cv-03248, 2021 WL 5493238, at *8 (N.D. Ill. Nov. 23, 2021) ("Defendants assert that the IMWL and IWPCA are only applicable for work performed while in Illinois. This court agrees."); *Chen v. Quark Biotech, Inc.*, No. 03 C 5729, 2004 WL 1368797, *6 (N.D. Ill. June 17, 2004) ("Plaintiff points to evidence that he was in Chicago for a few weeks and performed work for defendant while in Chicago. However, plaintiff was paid for that work. The unpaid wages that plaintiff seeks as damages are for work that would have been performed in Ohio in 2002 and thereafter. The IWPCA does not apply to such a claim.").

Dated: November 14, 2022                                    Respectfully submitted,

                                                            */s/ Andrew J. Butcher*
                                                            Andrew J. Butcher
                                                            abutcher@scopelitis.com
                                                            Charles Andrewscavage
                                                            candrewscavage@scopelitis.com
                                                            SCOPELITIS, GARVIN, LIGHT, HANSON
                                                            & FEARY, P.C.
                                                            30 West Monroe Street, Suite 1600
                                                            Chicago, IL 60603
                                                            Tel: 312-255-7172
                                                            Fax: 312-422-1224

                                                            E. Ashley Paynter
                                                            apaynter@scopelitis.com
                                                            SCOPELITIS, GARVIN, LIGHT, HANSON
                                                            & FEARY, P.C.
                                                            3214 West McGraw Street, Suite 300
                                                            Seattle, WA 98199
                                                            Tel: 206-288-6192
                                                            Fax: 206-299-9375

                                                            *Counsel for Defendants,*
                                                            *Diakon Logistics and William C. Jarnagin*