**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TIMOTHY JOHNSON, and** | ) | |
| **DARRYL MOORE, individually** | ) | |
| **and on behalf of all others** | ) | |
| **similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 16 C 6776** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **DIAKON LOGISTICS and WILLIAM C.** | ) | |
| **JARNAGIN, JR.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs Timothy Johnson and Darryl Moore bring this action individually, and on behalf of all other similarly situated delivery truck drivers, alleging that defendants, Diakon Logistics and its officer William C. Jarnagin, Jr., violated the Illinois Wage Payment and Collection Act (the "IWPCA" or the "Act"), 820 ILCS §115/1 *et seq.*, by classifying them as independent contractors, instead of employees, which resulted in unlawful deductions from their wages. Plaintiffs seek reimbursement on behalf of a class of drivers in Illinois who signed certain Service Agreements with Diakon.

On remand from the Seventh Circuit, *see Johnson v. Diakon Logistics, Inc.*, 44 F.4th 1048, 1050 (7th Cir. 2022) ("*Johnson I*"), the Court rules on the parties' cross motions for summary judgment, (Dckts. ##264, 265, 268, 272). Through their motions, plaintiffs seek summary judgment on the questions of whether: (1) they are employees under the IWPCA, (Dckt. #264); (2) the IWPCA applies to all work plaintiffs and the other class members performed in this case; and (3) the deductions Diakon took from plaintiffs' and class members' pay in reliance on the Service Agreements and promissory notes were authorized within the

1

meaning of the IWPCA. (Dckt. #268). In its motion, Diakon seeks summary judgment on the grounds that the IWPCA does not apply to plaintiffs (on both statutory definition and extraterritoriality grounds) and that the challenged deductions fall under one or more statutory exceptions. (Dckt. #275). Finally, Jarnagin renews his motion for summary judgment and asserts that he has no personal liability for the alleged IWPCA violations. (Dckt. #265).

For the reasons stated below, plaintiffs' motion for summary judgment, (Dckt. #268), is granted in part and denied in part; plaintiffs' renewed motion, (Dckt. #264), is granted; Diakon's motion, (Dckt. #272), is granted in part and denied in part; and Jarnagin's motion for summary judgment, (Dckt. #265), is granted.

## I. LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment *unless* it is a genuine dispute as to a material fact); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (issues of material fact are material if they are outcome determinative).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat'l Sec. Agency,*

*Inc.*, 621 F.3d 651, 654 (7th Cir. 2010); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, all facts and reasonable inferences must be drawn in the light most favorable to the non-moving party. *King v. Hendricks Cnty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020). Ultimately, summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up). These standards apply equally to cross-motions for summary judgment, *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017), and the Court considers evidence from all four motions for summary judgment at issue to ensure that there is no material dispute, *Torry v. City of Chicago*, 932 F.3d 579, 584 (7th Cir. 2019).

## II.     FACTUAL BACKGROUND

The Court draws the factual record from the parties' pleadings; Diakon's statement of material facts ("DSOF") and its accompanying exhibits, (Dckt. #274 to #274-12); plaintiffs' response to DSOF ("DSOF Resp."), (Dckt. #278); plaintiffs' statement of additional facts ("PSAF"), (Dckt. #278), defendants' response to PSAF ("PSAF Resp."), (Dckt. #284); plaintiffs' statement of facts ("PSOF") and its accompanying exhibit, (Dckt. #270 and #270-1); defendants' response to PSOF ("PSOF Resp."), (Dckt. #280); defendants' statement of additional material facts ("DSAF"), (Dckt. #280); and plaintiffs' response to DSAF ("DSAF Resp."), (Dckt. #286).

### A.     The Parties and the Work They Perform

Defendant Diakon Logistics ("Diakon") is a Virginia-based, third-party logistics

company[1] that provides furniture and appliance delivery services in a number of states, including Illinois. (PSOF Resp. ¶1; DSOF Resp. ¶1). Defendant William C. Jarnagin, Jr. ("Jarnagin") served as Diakon's president, chairman, and eventually, chief executive officer. (Dckt. #221 ¶1).

At all times relevant to this matter, Diakon subcontracted transport and delivery functions to transportation companies and their drivers through Service Agreements. (DSOF Resp. ¶¶1, 3; Dckt. #215-3 ¶30 ("To provide deliveries for Diakon, drivers are required to sign a Service Agreement with Diakon.")).

One of Diakon's customers was Innovel Solutions, Inc. ("Innovel"), a subsidiary of Sears, Roebuck and Co. ("Sears"). (PSOF Resp. ¶2). To facilitate Diakon's operations, drivers picked up goods from Innovel's Romeoville, Illinois and Granite City, Illinois warehouses, (*id.* ¶3), then delivered the products to locations in several states, including Illinois, Missouri, and Indiana. (DSOF Resp. ¶6; Dckt. #276-4 at 28). Diakon maintained an office at Innovel's Romeoville warehouse. (Dckt. #215-1 ¶6).

Plaintiffs Darryl Moore ("Moore") and Timothy Johnson ("Johnson") both provided third-party delivery services for Diakon. (DSAF Resp. ¶¶6, 11). Moore first delivered product out of Innovel's Romeoville warehouse on behalf of MJCAT Trucking (a company owned by another class member), (*id.* ¶6), but later signed his own Service Agreement with Diakon dated June 24, 2014. (*Id.* ¶¶6–7; Dckt. #274-9). Moore subsequently terminated his Service Agreement in April 2015. (DSAF Resp. ¶10). During his tenure with Diakon, Moore performed delivery services for Diakon both inside and outside of Illinois. (*Id.* ¶9).

Johnson first contracted with Diakon in November 2011. (*Id.* ¶11). Johnson terminated

---

[1] Third-party logistics companies handle "the management of transportation, demand forecasting, information management, industry maintenance, warehousing, and distribution." (PSOF Resp. ¶4).

that contract six months later and in June 2012 entered into a new agreement with Diakon on behalf of his transportation company, EZ Techniques, Inc., ("EZ Techniques").  (*Id.* ¶12).  Johnson stopped performing delivery services for Diakon in September 2015.  (*Id.* ¶13).  During his tenure with Diakon, Johnson performed delivery services for Diakon both inside and outside of Illinois.  (*Id.* ¶14).

### B.    The Agreements and the Deductions

Like Moore and Johnson, the other class members were required to enter Service Agreements with Diakon.  (PSOF Resp. ¶7; DSAF Resp. ¶3).  The Service Agreements stated that the "Contractor and/or its employees" were not to be considered "as having the status of an employee of [Diakon] for any purpose whatsoever."  (*See, e.g.*, Dckt. #247-8 at 2; Dckt. #247-9 at 2).

The "Fees" section of the Service Agreements provided that "Contractor shall receive payment for services in accordance with Exhibit A . . ."  (Dckt. #274–8 at 3).  Exhibit A in turn provided as follows:

> 1.    **Percental of Revenue**.  Unless otherwise agreed to in writing between the parties, Company shall pay Contractor no less than sixty-two percent (62%) of the adjusted gross revenue ("AGR"), which shall be distributed to Contractor on a weekly basis. For purposes of this Exhibit, AGR shall mean all revenue received by Company from its customers for transportation services provided by Contractor under this Agreement after reduction for (1) any non-hauling revenue received from Company's customers, including for warehousing, scheduling, storage services as well as any reimbursements made for labor, managerial or administration services provided by the Company; (2) the amount paid to any third party by Company in relation to the particular shipment handled by Contractor, including amounts paid to other contractors as a pro rata payment for their participation in that particular movement: (3) any revenue received by Company as an excess value or insurance charge; (4) all incentives, discounts or commissions given to Company's customers or other third parties. Any increase in the AGR paid to Contractor and not memorialized in a written addendum signed by both parties shall be considered a temporary adjustment and may thereafter be reduced by Company to no less than sixty-two percent (62%) at the Company's discretion.

2. **Chargeback and Deduction Items**. The following items shall be charged back to or deducted from Contractor's compensation or from Contractor's Bond Fund in the event that Contractor's compensation is insufficient:

(a) Loss and damages provided in Section 6 or elsewhere in this Agreement;

(b) Any advances or prepayments by Company of cost or expenses to be borne by Contractor under this Agreement;

(c) Any products, equipment or services which Contractor chooses to purchase or rent from or through Company; provided, however, that it is understood that Contractor is not required to purchase or rent any products, equipment or services from or through Company as a condition of entering into this Agreement;

(d) Any amounts necessary to fulfill Contractor's performance bond obligations as set forth In Section 7 or elsewhere in this Agreement;

(e) Any insurance related expense which is Contractor's obligation under Exhibit B of this Agreement; or

(f) Any other expense or cost incurred by Company which is Contractor's responsibility under this Agreement or any exhibit or addendum.

Deductions and chargebacks may represent either full payment or, if set forth in a separate written agreement, installment payments for the items enumerated above. All deductions and chargebacks shall be itemized to the extent provided elsewhere in this Agreement, including Exhibit B if applicable. The amount of each deduction and chargeback shall be computed based on the actual cost or expense incurred by the Company. In the event the Company should assess any type of administrative charge or mark-up to the actual costs charged back to Contractor, the Company shall provide Contractor with prior written notice of the additional charges. Contractor hereby waives any objection to any chargeback or deduction item unless Contractor notifies Company of Contractor's disagreement with such chargeback or deduction item within thirty (30) days from the date that the chargeback or deduction is made.

(*Id.* at 7).

Plaintiffs and the class members also often signed promissory notes listing a total dollar amount Diakon could take from their pay. (PSOF Resp. ¶9). The amounts were set out as recurring weekly deductions that Diakon would take from the drivers' settlement statements. (*See* Dckt. #270-1). The promissory notes did not itemize the payments the driver had to make,

nor did they provide any mechanism for a driver to revoke their consent to what amounted to a deduction from their pay. (*See* Dckt. #45-1 at 14; Dckt. #45-2 at 13).

Another section of the Service Agreement indicated that Diakon was authorized to deduct certain charges from "settlements" to the extent those charges were paid on the drivers' behalf by Diakon. (*See, e.g.*, Dckt. #247-8 at 12; Dckt. #274-9 at 12). The charges to be deducted included, among other things, "Truck Rentals," "Truck Fuel," "Uniforms," and "Truck Washing." (*See, e.g.*, Dckt. #247-8 at 13; Dckt. #274-9 at 13). For example, Diakon could facilitate weekly truck rentals from a third-party on a contractor's behalf, then deduct the rental amounts from the contractor's settlement statements and forward those amounts to the truck rental company. (DSOF Resp. ¶42). Johnson testified it was more efficient to rent his company's truck through the process Diakon facilitated than to purchase one, and Moore testified that renting through Diakon was the cheapest option he could find. (*Id.* ¶43).

Generally, the Service Agreement did not list a corresponding amount for the deductions. (*See, e.g.*, Dckt. #247-8 at 13; Dckt. #274-9 at 13). The only deductions in the Service Agreement which contained specific dollar amounts were those associated with insurance. (*See, e.g.*, Dckt. #274-8 at 10–11; Dckt. #274-9 at 10). Defendants assert that plaintiffs "received benefits from deductions including the convenience of Diakon facilitating payments" and "evident savings" because they did not need to make "upfront purchases on the open market." (DSOF Resp. ¶36). Plaintiffs agreed they benefited from deductions related to insurance coverage. (*Id.* ¶51).

At the end of each week, Diakon issued settlement checks. (DSAF Resp. ¶18). Prior to issuing a check, Diakon provided the contracting party (i.e., either the principal of the transportation company or the individual driver, whichever entity signed the Service Agreement)

7

a draft of the settlement statement. (*Id.*). The draft statement broke down the contractor's gross revenue for the week (based on the services provided by all their trucks) and each specific expense charge scheduled to be taken from that gross revenue. (*Id.*). This process permitted the contractors to review the drafts and challenge the calculation of the gross revenue or any charge-back they thought was inappropriate or unauthorized. (*Id.*).

## C. Procedural History

In 2016, Plaintiffs filed a class action suit against Diakon for alleged violations of the IWPCA. On January 23, 2020, the court certified the class as follows:

> All delivery drivers who (1) signed a Service Agreement with Diakon, (2) were classified as independent contractors, and (3) who performed deliveries for Diakon and Sears in Illinois between June 28, 2006 and the present.

(Dckt. #185 at 5). Subsequently, both parties filed cross motions for summary judgment. The court granted defendants' motion on the grounds that Virginia substantive law, as the choice of law identified in the Service Agreements, governed this dispute. (Dckt. #244 at 17). The Seventh Circuit reversed and remanded. *See Johnson I*, 44 F.4th at 1050. The parties have renewed and re-filed cross motions for summary judgment. The Court now resolves these motions.

## III. ANALYSIS[2]

On summary judgment, plaintiffs seek a ruling that: (1) they are employees under the IWPCA; (2) the IWPCA applies to all work performed by class members in this case; and (3) the

---

[2] As a federal court sitting in diversity, this Court applies state substantive law. *Horne v. Electric Eel Manufacturing Company, Inc.*, 987 F.3d 704, 713 (7th Cir. 2021). As previously established, the Court has diversity jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2) (the "Act") as the class meets the Act's requirement of minimal diversity. *See Johnson I*, 44 F.4th at 1050 (finding that the certified "class satisfies the Act's [jurisdictional] requirements" even when the two "more complicated" (for jurisdictional purposes) defendants, since dismissed, remained in this suit).

deductions taken from plaintiffs' and class members' pay violated the IWPCA. Defendants oppose plaintiffs' motion and separately seek a ruling that: (1) Diakon did not make deductions from "wages" under the Service Agreements; and (2) Johnson and Moore's individual claims under the IWPCA fail because they either authorized each deduction or each deduction was otherwise for their benefit. Jarnagin separately requests that the Court grant summary judgment on plaintiffs' claims against him. The Court addresses the parties' arguments below.

### A.      The Drivers are Diakon's Employees Under the IWPCA.

Plaintiffs seek a ruling that the IWPCA applies to all work performed by the class members in this case. The IWPCA's protections apply "to all . . . employees" in Illinois. 820 ILCS 115/1. Thus, the threshold issue before the Court is whether plaintiffs and the class members are "employees" of Diakon within the meaning of the IWPCA. For the reasons set forth below, the Court finds that plaintiffs and the other class members are "employees" who can assert IWPCA claims against Diakon.

### 1.      The Court Reaches the Employment Element of Plaintiffs' IWPCA Claim.

As an initial matter, defendants argue that this Court need not analyze the employment element of plaintiffs' IWPCA claim because the Service Agreements that Diakon entered were often with *business entities* owned by class members. (Dckt. #271 at 2). Defendants' argument—which they previously raised in their motion to dismiss—is that "the absence of an agreement to pay wages between a business owner, . . . *individually*, and Diakon vitiates the IWPCA." (*Id.*) (emphasis added). At the pleading stage, this Court determined that defendants' argument was "not a winning one," *Johnson v. Diakon Logistics*, No. 16-CV-06776, 2018 WL

1519157, at *9 (N.D.Ill. Mar. 28, 2018).  Defendants have not put forth any persuasive reason for the Court to alter its prior conclusion on summary judgment.

In effect, defendants ask this Court to disregard its prior ruling and violate the law of the case doctrine.  The law of the case doctrine establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the remainder of the suit.  *Williams v. Comm'r*, 1 F.3d 502, 503–04 (7th Cir. 1993).  A court will only reexamine an earlier ruling by the same court if it has a reasonable conviction that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that benefited from it.  *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995).

This Court previously held that a formal agreement between the parties was not required under the IWPCA, and it could reasonably infer from Johnson's allegations that the parties agreed to form an employment relationship with the "option of having . . . payments going through the company, [EZ Techniques], that [Johnson] owned."  *Johnson*, 2018 WL 1519157, at *9.  Defendants provide no persuasive reason to conclude this Court's prior ruling (which is in accord with decisions from other courts) was wrong.  *See e.g.*, *Hill v. Cargo Runner Co.*, No. 22-CV-00910, 2023 WL 6213674, at *14 (N.D.Ill. Sept. 25, 2023) ("Illinois and the Seventh Circuit frequently reject these end-runs [of the IWPCA] and find a plausible employment agreement with individuals, even if the individuals were paid through a corporate entity.") (citing *Johnson*); *Bruger v. Olero, Inc.*, 434 F.Supp.3d 647, 655–57 (N.D.Ill. 2020) (concluding the fact that the plaintiffs signed their agreements in their capacities as sole owners of corporate entities was not dispositive of whether they were "employees" under the IWPCA); *Vera v. HomeDeliveryLink, Inc.*, No. 23 CV 14278, 2025 WL 20468, at *5 (N.D.Ill. Jan. 2, 2025) ("Similarly, that a driver has incorporated as an LLC does not necessarily alter the analysis of whether the driver is an

employee under the [IWPCA].") (citing *Johnson* and *Bruger*); *Patel v. 7-Eleven, Inc.*, No. 18 C 07010, 2019 WL 3554438, at *4 (N.D.Ill. Aug. 5, 2019) (analogizing *Johnson* to its facts and stating the court was "not aware of any law creating a hard-and-fast rule that prohibits a franchisee corporation's sole owner from qualifying as an employee of the franchisor under the IWPCA.").[3]

Accordingly, the Court finds that the fact that certain class members opted to sign the Service Agreements through their companies, rather than individually, does not vitiate their IWPCA claims.

### 2. Defendants Fail to Establish All Three Prongs of the Independent Contractor Exemption.

As mentioned above, the IWPCA applies only to employees. The IWPCA regards all individuals who work for an employer to be employees unless they meet the statute's independent-contractor exemption, which excludes from the statutory definition of an employee any individual:

> (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact; and
>
> (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer . . .; and
>
> (3) who is in an independently established trade, occupation, profession or business.

820 ILCS 115/2.

---

[3] Neither *Enger v. Chicago Carriage Cab Co.*, 812 F.3d 565, 570 (7th Cir. 2016) nor *Kiebala v. Boris*, No. 1:16 CV 7478, 2017 WL 4339947, at *4 (N.D.Ill. Sept. 29, 2017), *aff'd,* 928 F.3d 680 (7th Cir. 2019)—on which defendants rely—demand a different conclusion. In *Enger*, the cab drivers, unlike the drivers here, "admitted in their complaint that they 'receive[d] no wages.'" 812 F.3d at 569. In *Kiebala*—a non-IWPCA case—the court held Kiebala could not prevail where, unlike here, he sought to recover for injuries that were derivative of injuries to his companies' profitability. 2017 WL 4339947, at *4. In *Kiebala*, the plaintiff's luxury car share business was not synonymous with its individual owner, unlike the plaintiff businesses in this case.

This test, commonly referred to as the "ABC Test," is conjunctive, which means an employer must satisfy all three prongs to classify a worker as an independent contractor. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016).[4]  If an employer cannot demonstrate that a worker satisfies each prong of the ABC Test, then the worker is considered an employee and is protected by the IWPCA.  *See, e.g.*, *Byung Moo Soh v. Target Mktg. Sys., Inc.*, 817 N.E.2d 1105, 1109 (Ill.App. 2004) ("a person who does not fit all three requirements cannot be excluded from the class of people who are to be considered employees under this section of the [IWPCA].").  Thus, the burden of proof lies with Diakon to show that plaintiffs and the other class members were independent contractors.  *AFM Messenger Serv. v. Dep't of Emp. Sec.*, 763 N.E.2d 272, 283 (Ill. 2001).

Here, Diakon fails to present evidence to satisfy the second element of the ABC Test; namely, that plaintiffs performed work which was either outside Diakon's usual course of business or places of business.

It is undisputed that Diakon holds itself out as a logistics provider which helps its customers arrange retailers' products and orders for delivery.  It is also undisputed that to provide these services, Diakon relies on plaintiffs and other delivery drivers.  The work performed by the

---

[4] Defendants argue that if the Court does assess the employment element of plaintiffs' IWPCA claim, "plaintiffs must first establish that Diakon employs each class member though a joint employment analysis before the ABC Test comes into play."  (Dckt. #271 at 3).  Defendants are incorrect.  Courts are clear that whether a driver has incorporated does not alter the analysis of whether the driver is an "employee."  *See Costello v. BeavEx Inc.*, 303 F.R.D. 295, 299, 310 (N.D.Ill. 2014), *aff'd in part, vacated in part on other grounds,* 810 F.3d 1045 (7th Cir. 2016) (proceeding directly to the ABC analysis where the defendant delivery service used drivers who were incorporated); *Bruger*, 434 F.Supp.3d at 655–57 (finding plaintiffs' work was done "within defendants' usual course of business" where plaintiffs signed their agreements in their capacities as sole owners of corporate entities); *Ware v. Indus. Comm'n*, 743 N.E.2d 579, 585–86 (Ill.App. 2000) (the fact that a truck driver had incorporated did not "significantly alter the analysis" as to whether the driver was an employee under the Workers' Compensation Act, where he had no customers of his own and worked exclusively for a single carrier company).

class members in this case—furniture and appliance deliveries—thus falls squarely within Diakon's "course of business." *See e.g.*, *Prokhorov v. IIK Transp., Inc.*, No. 20 CV 6807, 2024 WL 3694523, at *8 (N.D.Ill. Aug. 7, 2024) ("Here, drivers are necessary for IIK's business, which by its own admission is to provide freight-delivery services. . . And truck drivers perform work in IIK's usual course of business because 'the act of driving is necessary to the business.'"); *Niiranen et al. v. Carrier One Inc., et al.*, No. 20-CV-06781, 2025 WL 885701 (N.D.Ill. Mar. 22, 2025) ("As one of the drivers tasked with transporting freight for Carrier One's customers, Treadway's work is essential to Carrier One's business").

It is also undisputed that plaintiffs and the other class members perform their work at Diakon's "places of business" because they are required to pick up goods at Diakon's facility in Romeoville, Illinois. And even if the drivers did not report to Romeoville routinely, they still performed their work at Diakon's place of business because in cases involving delivery services, the "place of business extend[s] to the delivery routes that drivers took regardless of whether those routes crossed state lines." *Prokhorov*, 2024 WL 3694523, at *8; *see also Niiranen*, 2025 WL 885701, at *18 ("[G]iven the nature of a freight transportation business, Carrier One's place of business encompasses the roadways on which its drivers travel.").

Thus, Diakon has failed to carry its burden to show that the class members satisfy the second prong of the ABC test. *Niiranen*, 2025 WL 885701, at *18–19 (finding defendants failed to meet their burden on the second prong of the independent contractor exemption where the drivers' work was performed both in the employer's usual course of business and at its usual places of business); *NPF Racing Stables, LLC v. Aguirre*, No. 18 C 6216, 2020 WL 1322849, at *7 (N.D.Ill. Mar. 20, 2020) (concluding the independent contractor exception did not apply where the plaintiff adequately alleged that she conducted her work at NPF's place of business

and in the usual course of business.). It is well-settled that "the inability to satisfy any one of the conditions defeats a claim that the exemption applies." *O'Malley v. Udo*, 198 N.E.3d 323, 336 (Ill.App. 2022); *Costello*, 810 F.3d at 1059 ("Because the test is conjunctive, if BeavEx cannot satisfy just one prong of the test, its couriers must be treated as employees."). Consequently, the Court finds that the class members are employees of Diakon under the IWPCA.[5] *See Niiranen*, 2025 WL 885701, at *19 (concluding that plaintiff was an employee who could assert an IWPCA claim where defendants failed to establish the second prong of the IWPCA's independent contractor exemption).

**B.      The IWPCA Applies to the Drivers' Work Inside and Outside of Illinois.**

Defendants argue that even if the class members are employees under the IWPCA, defendants are entitled to summary judgment regarding all work performed outside of Illinois because the IWPCA applies only to work performed within this state.

Multiple courts have addressed the quantum of work that must be performed in Illinois to come under the umbrella of the IWPCA. In *Watts v. ADDO Mgmt., L.L.C.*, for example, the Illinois Appellate Court found the phrase "in this State," as it is used in the IWPCA, to be ambiguous. 97 N.E.3d 75, 81 (Ill.App. 2018). The court then turned to the Illinois Department of Labor's ("IDOL") interpretation for guidance. *Id.* Upon reviewing IDOL's regulations and their amendments, the court found it "clear that the [IWPCA's] application is not limited to any specific quantum of work performed in Illinois, but, in fact, may apply in certain circumstances

---

[5] The Court notes that fact that the Service Agreements refer to the drivers as "contractors," and not employees, is not dispositive as to whether they are "employees" under the IWPCA. To the contrary, "[c]ourts in Illinois routinely disregard contractual language classifying workers as contractors or consultants" when determining employer status under the IWPCA. *Johnson I*, 44 F.4th at 1050. Instead, "the critical test for determining whether plaintiffs count as employees for purposes of the [IWPCA] comes from the statute rather than a contract." *Id.* Thus, a contract declaring the plaintiff to be an independent contractor is, in the Seventh Circuit's words, "irrelevant, no matter what it says." *Id.*

*even where all of the work is performed outside of this state*." *Id.* at 82 (emphasis added); *see also Das v. Tata Consultancy Servs. Ltd.*, 118 F.4th 903, 908–09 (7th Cir. 2024) (explaining that IDOL regulations are persuasive guidance and, further, that "Illinois values the opinion of the agency charged with the administration and enforcement of the statute.") (cleaned up).

Similarly in *Prokhorov*, which followed *Watts*, the court reiterated that the IWPCA "applies to all employers and employees" in Illinois, and that the IWPCA's "'application is not limited to any specific quantum of work performed in Illinois.'" *Prokhorov*, 2024 WL 3694523, at *6, *quoting Watts*, 97 N.E.3d at 82. More recently, in *Niiranen*, the court found evidence that plaintiff performed some work in Illinois was "enough . . . for him to maintain a claim under the IWPCA . . ." on summary judgment. *Niiranen*, 2025 WL 885701, at *17.

This Court is persuaded by *Watts*, *Prokhorov*, and *Niiranen*—as well as the multiple other courts that have followed *Watts*—and finds that the IWPCA applies to all work performed by plaintiffs and the class members on behalf of Diakon, whether inside or outside of Illinois, given that plaintiffs have performed *some* work in Illinois.[6] *See Tsybikov v. Dovgal*, No. 19 C 3334, 2023 WL 4029823, at *2 (N.D.Ill. June 15, 2023) (relying on *Watts* to find the IWPCA applied to work performed by delivery truck drivers outside Illinois on summary judgment); *Psifidis v. Dearborn Life Ins. Co.*, No. 4:23-CV-01825, 2024 WL 794537, at *2 (S.D.Tex. Feb. 22, 2024) ("But application of IWPCA 'is not limited to any specific quantum of work performed in Illinois.'") (citing *Watts*); *Piquion v. Amerifreight Sys. LLC*, No. 22 C 5690, 2023 WL 8113379, at *18 (N.D.Ill. Nov. 22, 2023) (same); *Yata v. BDJ Trucking Co.*, No. 17 CV 3503, 2018 WL 3303290, at *5 (N.D.Ill. July 5, 2018) (same).

---

[6] This Court agrees with the *Watts* court's holding that it was improper for the trial court to rely on a calculation of the percentage of work performed by the plaintiffs in Illinois as grounds for dismissal. 97 N.E.3d at 82.

Diakon cites to three cases to support its position that *only* work performed in Illinois is covered by the IWPCA. (*See* Dckt. #279 at 18 (citing *Johnson I*, 44 F.4th at 1052–53; *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998)); Dckt. #298 at 1-2 (citing *Cline v. FitzMark Chicago, Inc.*, No. 21-CV-04253, 2023 WL 2711615, at *7 (N.D.Ill. Mar. 30, 2023)). These cases, however, do not support Diakon's position.

In *Johnson I*, Diakon initially argued that the substantive law should be that of Virginia, the jurisdiction named in the contract, but the Seventh Circuit rejected that argument. *Johnson I*, 44 F.4th at 1053. In the course of resolving this choice of law dispute, the Seventh Circuit noted that the IWPCA "governs payment for work in Illinois regardless of what state's law governs other aspects of the parties' relations," and that "[t]he contractual clauses on which Diakon relies do not apply to claims brought under the Act based on work done in Illinois." *Id.* at 1052–53. The Seventh Circuit was not presented with the question of whether out-of-state work performed by an employee who is covered by the IWPCA is within the scope of a statute, and it did not address the issue. *See Yata*, 2018 WL 3303290, at *5 ("No court of binding authority has set forth a minimum quantum of work in Illinois to qualify as an employee under the [IWPCA].").

In *Glass*, the Seventh Circuit affirmed the dismissal of the plaintiff's IWPCA claim where the plaintiff—who was never an Illinois resident and performed no work for the defendant Illinois company while he was in Illinois—performed <u>all</u> his work for the company on a remote basis while he was in Spain. *Glass*, 133 F.3d at 1000. Similarly, in *Cline*, the court granted a motion to dismiss that contained no allegations of <u>any</u> work done in Illinois. *Cline*, 2023 WL 2711615, at *7. Thus, while *Glass* and *Cline* "set the outer boundary for the [IWPCA's] reach—a [worker] who performed *no* work in Illinois," they do not "otherwise establish a minimum threshold for coverage" under the IWPCA. *Prokhorov*, 2024 WL 3694523, at *6 ("I reiterate

that *Watts* is not inconsistent with *Glass*. While *Glass* set the outer boundary for the Act's reach—a non-resident who performed *no* work in Illinois and exclusively worked in Spain did not qualify for the Act's protection—it did not otherwise establish a minimum threshold for coverage.") (emphasis in original); *see also Tsybikov*, 2023 WL 4029823, at *2 (differentiating *Glass* because the plaintiff was a foreign national who did 100 percent of his work in Spain).

Accordingly, the Court grants plaintiffs' motion for summary judgment to the extent it seeks a ruling that the IWPCA applies to all work performed by class members in this case.

### C.   Diakon Took Deductions from the Drivers' "Wages" as Defined by the IWPCA.

The IWPCA applies only to "deductions by employers from wages." 820 ILCS 115/9. The IWPCA has been amended to define wages broadly. *In re Montalbano*, 486 B.R. 436, 441–42 (Bankr. N.D.Ill. 2013); *Becker v. Crane Co./Valve Div.*, No. 90 C 1528, 1991 WL 4429, at *4 (N.D.Ill. Jan. 17, 1991) ("This definition of wages is very broad."). Under the IWPCA, "wages" are "*any* compensation owed an employee by an employer pursuant to an employment contract or agreement between the two parties, *whether the amount is determined on a time, task, piece, or any other basis of calculation*." 820 ILCS 115/2 (emphasis added). The IWPCA "does not define 'compensation,' but the Seventh Circuit has defined the term as 'payment for value received or service rendered.'" *Bell v. Bimbo Foods Bakeries Distrib., Inc.*, No. 11 C 3343, 2013 WL 6253450, at *4 (N.D.Ill. Dec. 3, 2013), *quoting Bock v. Comput. Assocs. Int'l, Inc.*, 257 F.3d 700, 706 (7th Cir. 2001).

The draft statements at issue here break down the driver's gross revenue for the week—based on services rendered—and identify specific expenses scheduled to be taken from that gross revenue. (Dckt. #274-10.) This gross revenue undoubtedly constitutes "wages" owed to the

drivers—under the IWPCA's broad definition—and absent the deductions, would otherwise be paid to the drivers.

Diakon's argument that they did not make any deductions from "wages" because under the Service Agreements "wages are calculated net of any deductions," is unpersuasive. (Dckt. #273 at 11) (cleaned up). In particular, Diakon contends that "[b]ecause the Service Agreements only calculate alleged 'wages' after accounting for or assigning responsibility for any chargeback amounts, it did not deduct any amounts from [p]laintiffs' 'wages,' and no violation of the IWPCA therefore occurred." *Id.* [7] However, as *Johnson I* made clear, courts are guided by the IWPCA, "rather than a contract," to determine whether a plaintiff falls under its protection. *Johnson I*, 44 F.4th at 1050; *see also id.* at 1053 ("Diakon's duty to make only proper deductions from the drivers' wages flows from the Act, not the contracts."). Thus, the fact that the contracts appear to define "wages" to include an amount due the drivers net of the deductions is not dispositive. The Court therefore concludes that Diakon's deductions were taken from the drivers' "wages" under the IWPCA.

### D.        The Propriety of Diakon's Deductions from Plaintiffs' Wages.

The IWPCA prohibits employers from taking improper deductions from an employee's paycheck unless the deductions are: (1) "required by law;" (2) "to the benefit of the employee;" (3) "in response to a valid wage assignment or wage deduction order;" or (4) "made with the express written consent of the employee, given freely at the time the deduction is made." 820 ILCS 115/9. While an employer can establish a deduction is lawful under any one of these

---

[7] Diakon's reliance on *Enger* is misplaced because the plaintiff cab drivers admitted they did not receive wages. *Enger*, 812 F.3d at 569. Diakon's reliance on the Second Circuit's non-precedential order in *Green v. RXO Last Mile, Inc.*, No. 23-1239, 2024 WL 4315032, at *2–3 (2d Cir. Sept. 27, 2024), is likewise misplaced. In that case, the court held that Connecticut's statutory scheme allows parties to agree to use formulas to determine wages under Connecticut's Minimum Wage Act. *Id.* As such, *Green* is inapposite because it involved a different statute with a different definition of "wages."

exceptions, the employer bears the burden of proof to demonstrate the expectation is applicable. *Perry v. Krieger Beard Servs., LLC*, No. 3:17-CV-161, 2020 WL 4931834, at *3 (S.D.Ohio Aug. 24, 2020), *report and recommendation adopted,* No. 3:17-CV-161, 2020 WL 5629687 (S.D.Ohio Sept. 21, 2020) (citing 56 Ill. Admin Code tit. 56, §300.71).

Diakon contends that even if the IWPCA applies, the class members are properly classified as employees, and it took deductions from the employees' wages, it *still* did not violate the IWPCA because any deductions were either properly authorized or benefited the drivers. Plaintiffs claim that defendants violated the IWPCA when they made deductions for truck rentals, insurance coverage, workers' compensation/occupational accident insurance premiums, customer damage, and problem delivery costs. The Court addresses these arguments below.

**1. No Reasonable Factfinder Could Find that Diakon's Deductions for Problem Deliveries and Customer Damage Claims Were Authorized.**

The IWPCA provides an exception for deductions "made with the express written consent of the employee, given freely at the time the deduction is made." 820 ILCS 115/9(4). As explained above, courts look to state regulations from the IDOL to guide their interpretation of this provision of the IWPCA. *See Das*, 118 F.4th at 908–09; *see also Watts*, 97 N.E.3d at 81 (turning to IDOL regulations to construe an undefined term in the IWPCA).

The IDOL regulations—in place at the time of the deductions at issue—provided that:

a) Any written agreement between employer and claimant permitting or authorizing deductions from wages or final compensation must be given freely at the time the deduction is made. . .

b) When a deduction is to continue over a period of time and the written agreement provides for that period of time, provides for the same amount of deduction each period and allows for voluntary withdrawal for the deduction, the agreement shall be considered to be given freely at the time the deduction is made.

19

Ill Admin. Code tit. 56, §300.720 (2014).[8]

Defendants argue that plaintiffs gave their express written consent to the deductions at issue when they executed the Service Agreements and promissory notes. The Court disagrees and finds no genuine dispute of material fact as to whether plaintiffs provided express written consent to these deductions under §300.720(a). The record shows that they did not do so. The fact that the Service Agreements contained provisions generally describing types of deductions that could be taken from the drivers' pay does not establish freely given written consent. *Prokhorov*, 2024 WL 3694523, at *9; *Johnson*, 2018 WL 1519157, at *8 ("The regulations support the idea that a proper consent entails the employee having some idea what the actual deductions would be.").

Nor does the fact that the settlement process allowed the drivers to challenge their charges for problem deliveries and customer dispute claims establish freely given written consent. Allowing drivers to dispute charges (i.e., opt-out) is *not* the same as obtaining freely given authorization to take deductions at the time the deduction is taken (i.e., opt-in). *See Balderrama-Baca v. Clarence Davids & Co.*, No. 15 C 5873, 2019 WL 1057193, at *6 (N.D.Ill. Mar. 6, 2019) (finding defendants violated the IWPCA where uniforms were mandatory and plaintiffs were not given the option as to whether to consent to the uniform rental deduction); *see also Hernandez v. Midland Credit Mgmt., Inc.*, No. 04 C 7844, 2006 WL 695451, at *7 (N.D.Ill. Mar. 14, 2006) (comparing one statute that "permits an opt-out rather than an opt-in regime" with respect to third-party disclosures to another statute); *Cellco P'ship v. Hatch*, 431 F.3d 1077,

---

[8] In 2023, IDOL amended §300.720(b) to add: "No agreements for a defined duration of time shall last longer than six months." *See* Ill Admin. Code tit. 56, §300.720(b). The 2023 amendments do not apply here because plaintiffs' agreements were executed before these amendments were enacted. *Perry v. Dep't of Fin. & Pro. Regul.*, 106 N.E.3d 1016, 1020 (Ill. 2018); *Prokhorov*, 2024 WL 3694523, at *9.

1083 (8th Cir. 2005) (discussing the differences between opt-in and opt-out contractual provisions); *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 841 (2000) (Breyer, J. dissenting) (discussing how an opt-out statutory provision "work[s] differently in order to achieve very different legislative objectives" compared to an opt-in statutory provision.).

The Court further finds no genuine dispute of material fact as to whether plaintiffs provided express written consent to these deductions under §300.720(b). They did not do so. As this Court previously recognized, there is no indication in the record that the customer damage claim and problem delivery deductions were deducted on a regular basis. *See Johnson*, 2018 WL 1519157, at *8 (explaining that the regulations "support the idea that a proper consent entails the employee having some idea what the actual deductions would be."); *Noe v. Smart Mortg. Centers, Inc.*, No. 1:21-CV-01668, 2024 WL 4346562 (N.D.Ill. Sept. 29, 2024) (citing *Johnson* for the same). Moreover, even assuming that the deductions could be categorized as ongoing or recurring, the Service Agreement provides no notice about the duration of the deductions, the amount of the deductions, or a method for voluntary withdrawal. *See, e.g.,* Dkt. 274-9.[9]

Because the deductions for customer damage claims and problem deliveries were not authorized by drivers at the time the deductions were made, nor were they deducted on a specific schedule provided by the Service Agreement, no reasonable factfinder could find that these deductions were made in accordance with the IWPCA. *See, e.g.*, *Balderrama-Baca*, 2019 WL 1057193, at *6; *Hill*, 2023 WL 6213674, at *15. Defendants' motion for summary judgment on

---

[9] Defendants' reliance on *Bell v. Bimbo Foods*, *supra,* and *Osorio v. The Tile Shop*, LLC, No. 15 C 15, 2016 WL 316941 (N.D.Ill. Jan. 27, 2016) is misplaced. *Bell* is distinguishable because there was no dispute that the signed agreement authorized the employer to make weekly deductions of $56.88 for computer-related costs from the employee's paycheck. *Bell*, 2013 WL 6253450, at *5. And, *Osorio* is likewise inapposite because, unlike here, "Osorio knew exactly how much of each paycheck he would be required to give up." *Johnson*, 2018 WL 1519157, at *8 (citing *Osorio*, 2016 WL 316941, at *2).

the issue of deductions for problem deliveries and customer damage claims is denied and

plaintiffs' motion for summary judgment on the merits of this issue is granted.

### 2. The Deductions for Liability Insurance Coverage and Truck Rentals Were Proper Under the IWPCA Because They Were Taken for the Employees' Benefit.

Defendants assert that the deductions it made for liability insurance coverage and truck

rentals were proper under the IWPCA because they were to the drivers' benefit.[10]  Courts have

explained that it is the deduction—not the expense itself—that must be to the benefit of the

employee.  *Prokhorov*, 2024 WL 3694523, at *11; *Bell*, 2013 WL 6253450, at *4.

Here defendants proffer evidence that "plaintiffs received benefits from deductions

including . . . convenience . . . and the evident savings" because they did not have to make

"upfront purchases on the open market."  (Dckt. #283 at n.4, *quoting* DSOF Resp. ¶36).

Defendants also proffer evidence that plaintiffs "agreed they benefited from deductions related to

insurance coverage," (Dckt. #283 at n.4, *quoting* DSOF Resp. ¶51), and that plaintiffs testified it

was cheaper or more efficient to rent trucks through the process Diakon facilitated than to

purchase trucks.  (DSOF Resp. ¶43).  Moreover, in their response to Diakon's statement of

material facts, plaintiffs do not dispute that the deductions related to insurance coverage and

truck rentals were of benefit to them, provided convenience, and proved cheaper than other

options.  (*See* DSOF Resp. ¶¶36, 43, 51).[11]  Defendants are therefore entitled to summary

---

[10] Diakon also argues that the insurance coverage and truck rental deductions were made with the express written consent of the drivers.  Because the Court finds that the deductions are otherwise permitted as a benefit to the employees, it need not reach this argument.

[11] Under Local Rule 56.1, a nonmoving party must provide a response that either admits or denies each of the moving party's statements of fact and must support any denials with specific citation to affidavits, parts of the record, or other supporting evidence.  *See* N.D.Ill. Local Rule 56.1(b)(3).  Where the opposing party fails to identify such materials, the moving party's allegations, where properly supported, will be deemed admitted.  *Id.*  Here, plaintiffs cite evidence that does not actually dispute Diakon's proffered facts and, as a result, Diakon's facts are deemed admitted where properly supported.

judgment with respect to the insurance coverage and truck rental deductions.  *Niiranen*, 2025 WL 885701, at *20 (granting summary judgment in defendants' favor where defendants "substantiated the benefit of [the] deductions.").

### 3. The Court Cannot Determine Whether Diakon's Deductions for Workers' Compensation/Occupational Accident Insurance Premiums Were Authorized Under the IWPCA Based on the Present Record.

The parties agree that Diakon made deductions for workers' compensation/occupational accident insurance premiums.  Plaintiffs assert that these deductions are "per se illegal" because "Diakon is required by Illinois law to provide employees with workers' compensation insurance" and "Illinois has a strong public policy to insure the protection of workers covered by the Workers' Compensation Act." (Dckt. #269 at 13–14).  Diakon, for its part, asserts that plaintiffs agreed to obtain workers' compensation/occupational accident insurance in their Service Agreements, and that the deductions benefited plaintiffs by enabling them to obtain the insurance coverage at a more competitive price and with less administrative burden than obtaining the insurance on the open market. (Dckt. #279 at 16).

Plaintiffs are correct that Illinois law requires employers to provide employees with workers' compensation insurance, *see Illinois Ins. Guar. Fund v. Virginia Sur. Co.*, 979 N.E.2d 503, 513 (Ill.App. 1992), and this Court agrees that "permit[ting] an employer to transfer to its employees the cost of workers' compensation insurance premiums would be inconsistent with both the general intent and the specific language of the Workers' Compensation Act." *Awuah v. Coverall N. Am., Inc.*, 952 N.E.2d 890, 899 (Mass. 2011).  Consequently, if plaintiffs are "employees" for purposes of the Illinois Workers' Compensation Act ("IWCA"), Diakon's deduction for plaintiffs' wages to pay for the workers' compensation insurance premiums would

be improper. On the other hand, if plaintiffs are not "employees" under the IWCA, the deductions would be proper because they were "to the benefit" of plaintiffs under the IWPCA.

Unfortunately, neither side has addressed the issue of whether plaintiffs are "employees" for purposes of the IWCA. Moreover, because the standards for determining whether a person is an "employee" under the IWPCA and the IWCA are different, *compare* 820 ILCS 115/2 *with* 820 ILCS 305/1(b)(2), the Court's finding that plaintiffs are "employees" under the IWPCA is not dispositive. Given that the record on this issue is not sufficiently developed, neither side is entitled to summary judgment on the issue of whether Diakon's deductions for workers' compensation insurance premiums were appropriate.

### E.    Jarnagin is Not Personally Liable.

In order for plaintiffs to prevail on their claim against Jarnagin, they must establish that he knowingly committed a violation under the IWPCA. To "knowingly permit" under the IWPCA means "to [] advise, consent, affect, or consult." *Cullotta v. United Surgical Partners Int'l, Inc.*, No. 19-cv-06490, 2021 WL 3367193, at *9 (N.D.Ill. Aug. 3, 2021); *Gibbs v. ABT Elecs., Inc.*, No. 21 CV 6277, 2022 WL 16540182, at *3–4 (N.D.Ill. Oct. 28, 2022). To that end, general evidence that an individual is a "decision maker" is not enough to state a claim under the IWPCA—let alone defeat summary judgment—without evidence that the decisionmaker "actually 'knowingly permitted'" IWPCA violations. *Gibbs*, 2022 WL 16540182, at *4.

Jarnagin testified that (1) "he has no direct responsibility for the classification of workers in Illinois and he has never been involved in setting policies related to settlement deductions or settlement check processing for any independent contractor drivers" and (2) that "he does not review or personally sign settlement statements or the checks attached to settlement statements." (Dckt. #267 at 6, *quoting* Dckt. #213-6 at 3). Plaintiffs do not directly dispute either fact, so

24

these facts are admitted. *See, e.g.*, *Hall v. Nicholson*, 584 F.Supp.3d 589, 591 (N.D.Ill. 2022) (considering admitted all facts "not 'controverted with specific citations to evidentiary material'"). And, when taken together, these two facts bar any individual liability under the IWPCA. *See Gibbs*, 2022 WL 16540182, at *4 (citation omitted) ("Being a 'decision maker,' without knowing permission of the alleged IWPCA violation, is not sufficient to state an IWPCA claim against [a person] in his personal capacity.").

Plaintiffs argue that Jarnagin's denials create a genuine issue of material fact, however, plaintiffs point to no evidence in the record that disputes the content of his testimony. *See Liu v. T&H Machine, Inc.*, 191 F.3d 790, 796 (7th Cir. 1999) ("A party must present more than mere speculation or conjecture to defeat a summary judgment motion."); *see also* Fed.R.Civ.P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."). Because plaintiffs cannot point to any evidence in the record to establish that Jarnagin had the requisite knowledge for liability, they cannot prevail on their claim against Jarnagin and his motion for summary judgment (Dckt. #265) is granted.

## CONCLUSION

For the reasons stated above, defendant Jarnagin's motion for summary judgment, (Dckt. #265), is granted; plaintiffs' motion for summary judgment, (Dckt. #268), is granted in part and denied in part; plaintiffs' renewed motion, (Dckt. #264), is granted; and defendant Diakon's motion, (Dckt. #272), is granted in part and denied in part.

**Date: March 31, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**